## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## BOWLING GREEN DIVISION

| | |
|---|---|
| **ROBERT W. BAIRD & CO.,** **INCORPORATED,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 1:24-cv-00115-DJH** |
| **NATHAN DREW RICHEY, JOSHUA J.** **MARSON, and ANDREW DOUGLAS** **BOYLES,** | |
| **Defendants.** | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS APPLICATION FOR PRELIMINARY INJUNCTION

Plaintiff, Robert W. Baird & Co., Incorporated ("**Baird**"), files this Memorandum of Law in Support of its Motion for Preliminary Injunction against Nathan Drew Richey ("**Richey**"), Joshua J. Marson ("**Marson**"), and Andrew Douglas Boyles ("**Boyles**" and collectively "**Defendants**").

### I. PRELIMINARY STATEMENT

This dispute arises out of the abrupt resignations of Defendants from Baird on July 31, 2024 and their immediate employment with Stifel, Nicolaus & Company, Incorporated ("Stifel"), a direct competitor of Baird, and Defendants' improper misappropriation of confidential information and solicitation of hundreds of Baird clients in relation thereto.

Richey, Marson, and Boyles joined Baird in 2019 as a part of Baird's acquisition of J.J. B. Hilliard, W.L. Lyons, LLC d/b/a Hilliard Lyons. Richey, Marson, and Boyles worked as part of a team alongside Shawn Mitchell Perry ("**Perry**") and Michael Lynn Jennings ("**Jennings**"). Together, this team serviced over 2,500 accounts and managed hundreds of millions of dollars in

client assets, the vast majority of which were sourced and acquired by Jennings and Perry. Every account serviced by these advisors was placed under the same code—Rep Code C701—regardless of who originated the account or who performed advisory services.

Jennings began his retirement in April 2021 by entering into an agreement (the "**Retirement Agreement**") with Richey, Marson, Boyles, and Perry, as well as Baird. (Declaration of Darrin Rudolph, ¶¶ 7-8). The Retirement Agreement granted Defendants an increased payout to the 2,500+ client accounts serviced by the team under Rep Code C701 (the "**Retirement Agreement Accounts**"). In exchange for this increased payout for the Retirement Agreement Accounts, the Retirement Agreement imposes restrictive covenants and confidentiality obligations on the Retirement Agreement Accounts.

Upon their departure to Stifel, Defendants improperly took confidential information for approximately 900 Retirement Agreement Accounts in direct violation of the Retirement Agreement and obligations imposed upon them therein. Moreover, Defendants used this ill-gotten confidential information to solicit Baird's clients in violation of their agreements.

Defendants' misconduct is well-documented and undeniable. Defendants' misconduct must be enjoined to preserve the status quo, prevent further irreparable harm to Baird, and protect the public interest in upholding contractual agreements and protecting confidential information and client personally identifiable information. Moreover, Defendants would suffer no harm by entry of an injunction, as such an injunction would merely require Defendants to abide by their contractual obligations and relevant law and regulations. Accordingly, this Court must grant Baird's Motion for Preliminary Injunction.

## II. <u>FACTUAL BACKGROUND</u>

### A. <u>The Defendants' Contractual Restrictions</u>

The Retirement Agreement contain restrictive covenants and confidentiality obligations, all of which have been breached.  *See generally* Declaration of Darrin Rudolph and Declaration of Shawn Perry.  The parties entered into the Retirement Agreement with the intention of exchanging various consideration:

- Jennings agreed to stop actively servicing clients and reduce his payout percentage as to the Retirement Agreement Accounts over the course of a 3-year period, eventually giving up his entire payout percentage as of July 1, 2024.

- Baird agreed to pay Jennings a Retirement Bonus of $560,500, and agreed to permit the payout percentage modifications as requested by the other parties.

- Perry and Defendants agreed to service the Retirement Agreement Accounts at Baird and obtain a higher payout on such accounts, and did so by submitting to the restrictive covenants governing these accounts.

(Rudolph Declaration, ¶ 11).  The Retirement Agreement benefitted all parties, so long as all parties complied with the terms of the agreement.  To ensure that Defendants complied with their end of the bargain, the Retirement Agreement contained a confidentiality provision as well as a non-solicit provision which governs the Retirement Agreement Accounts.  *Id.*, ¶¶ 15-16. Second, Defendants are also bound by two separate agreements to pay Baird damages in the event of a breach—Defendants agreed to pay liquidated damages on a diminishing payment schedule if they left Baird for any reason prior to June 30, 2028 so that Baird would be compensated for fronting a retirement payout to the retired FA, ***and*** Defendants agreed to pay compensatory damages if they violated any of the restrictive covenants concerning confidentiality and solicitation.  *Id.*, ¶¶ 17-18.

Regarding confidentiality, Section 26 of the Retirement Agreement provides in relevant part that the participants shall not disclose "any 'Confidential Information' that constitutes Baird's

trade secrets under the Wisconsin Uniform Trade Secrets Act or 'nonpublic personal information' of Baird clients" at any time during or after their employment with Baird, and requires the surrender and delivery to Baird of any originals and all copies of all records, books notes, and other documents which contain Confidential Information relating to the Client Accounts.  *See* Exhibit 1, Paragraph 26(b).  *Id*., ¶ 16. The Retirement Agreement provides that 'Confidential Information' includes client names, addresses, telephone numbers, e-mail addresses, and financial information. *Id*., ¶ 15.

Further, Section 28 of the Retirement Agreement contains multiple restrictions against soliciting business, stating that for one year after the termination of employment from Baird for any reason, Defendants will not use Confidential Information to solicit or contact any current Baird Client who has a Client Account subject to the Retirement Agreement, or directly or indirectly solicit any current Baird Client who has a Client Account subject to the Retirement Agreement. *Id*., ¶ 16.

To ensure the efficacy of these covenants, the Retirement Agreement specifically states that the terms of the agreement fall outside of the Protocol for Broker Recruiting ("**Protocol**"). *Id*., ¶ 17. The Protocol is an intra-industry agreement governing the use of client information when registered representatives move between firms that are signatories to the Protocol. *Id*.  The Retirement Agreement specifically states that the parties' "obligations to Baird as it relates to the Non-Solicitation and Confidentiality of Information paragraphs are not governed by the Protocol for Broker Recruiting." *Id*.

Defendants agreed that Baird has the right to seek injunctive relief if the Retirement Agreement is breached.  *Id*., ¶ 18.  Pursuant to the Retirement Agreement, in the event of a breach of any of the provisions contained therein, Defendants agreed that "money damages will not be an

adequate remedy to compensate, or to protect the business of Baird and Baird shall be entitled to the issuance by a court of a temporary restraining order and injunctive relief to prevent or terminate any anticipated or actual breach of the Agreement." *Id*. Further, Defendants agreed to "reimburse Baird for its reasonable costs, including attorney's fees, related to or arising out of its efforts to enforce the terms of this Agreement." *Id.*

As to non-injunctive relief, Defendants agreed in the Retirement Agreement that different forms of damages could apply depending upon different forms of breach. Section 12 of the Retirement Agreement includes a liquidated damages clause related to the timing of the departure, regardless of post-departure conduct. As stated above, the Retirement Agreement was structured such that Jennings—the Retiring FA—would be compensated directly by Baird in the amount of $560,500 immediately upon his retirement. *Id*., ¶¶ 11-12. Baird relied upon the Defendants to continuously service the accounts to offset this up-front, which is why a Liquidated Damages clause was included to govern if Defendants left Baird prior to the recoupment period. *Id*., ¶ 13.

In contrast to these liquidated damages, Section 29 of the Retirement Agreement (titled "Compensatory Damages") states that Baird is entitled to ***compensatory damages*** if Defendants violate any of the restrictive covenants. When reading Section 29 (Compensatory Damages) in context with Section 12 (Liquidated Damages), the two sections complement one another. Defendants are responsible for the Section 12 Liquidated Damages if they leave Baird for any reason *prior* to the end of the term—even if they exit the industry entirely—to make Baird whole for paying Jennings the Retirement Bonus under Section 13. In contrast, Successor FAs are responsible for paying Section 29 Compensatory Damages if they violate the restrictive covenants of Section 26 and Section 28 regardless of whether Jennings has been repaid, as this reflects a

separate harm to Baird. These two 'buckets' of damages result from two different types of contractual breaches.

**B.  <u>Defendants' Breaches and Violations</u>**

Upon Defendants' departure to the competition, Defendants created and took a 23-page "Protocol List" which contains the names, addresses, telephone numbers, e-mail addresses, containing over 1,400 total entries. (Rudolph Declaration, ¶ 22). Defendants took a copy of this list with them to their new employer and left a copy of the list with Baird. *Id.* When Baird examined Defendants' list and compared the list of clients against the list of clients governed by the Retirement Agreement, Baird quickly learned that Defendants had included information for hundreds of accounts governed by the Retirement Agreement. *Id.* ¶ 24. Defendants Resignation letters explicitly stated they intend on soliciting all of the clients whose information they took. *Id.* ¶ 23. Baird Customers who were governed by the Retirement Agreement also provided to Baird copies of solicitation letters sent by Defendants. *Id.* ¶ 26. Defendants' acts in taking this information and soliciting these customers violated the Retirement Agreement. *Id.* ¶ 25.

Baird promptly contacted Defendants about their violations and demanded that Defendants immediately remedy these issues. *Id.* ¶ 31. Baird demanded that the Defendants immediately return all information that was improperly taken, immediately destroy any copies of such information that were retained within the computer systems of their new employer, and immediately cease soliciting the customers who were governed by the Retirement Agreement. *Id.* Defendants acknowledged that some of the names on Defendant's list were those who they did not service. *Id.* ¶ 33. However, Defendants flatly rejected Baird's demands that Defendants comply with the terms of the Retirement Agreement. *Id.*

Accordingly, contemporaneous with this filing, Baird filed a Statement of Claim against all Defendants before the Financial Industry Regulatory Authority ("FINRA") on September 12, 2024. *Id.* ¶ 36. That Statement of Claim was brought on good faith belief that Defendants had willfully taken Confidential Information and had solicited customers governed by the Retirement Agreement under the false guise that the Protocol governed Defendants' transition to a competitor. *Id.*

This egregious conduct can be addressed only via this Court's issuance of an Order enjoining the Defendants to preserve the status quo pending a FINRA arbitration.

While Defendants claimed the protections of the Protocol, the Retirement Agreement specifically and unquestionably states that the Protocol does not apply to Retirement Accounts. Defendants further violated the Protocol by taking confidential trade secret documents and information for Retirement Accounts and for accounts they never serviced, thereby losing any purported protections of the Protocol. In addition to their initial violations, and despite Defendants' contractual obligations to Baird, upon their transition to Stifel, Defendants failed to return and improperly retained confidential documents and information belonging to Baird which they misappropriated to solicit their former clients.

These recent and serious breaches leave Baird with no choice other than to seek immediate injunctive relief and limited expedited discovery—remedies it cannot obtain in FINRA. Defendants' wrongdoing threatens Baird with irreparable harm in a variety of ways, including present and future economic loss, loss of goodwill and business reputation, misappropriation of its trade secrets, and injury to office stability. Accordingly, Baird asks this Court to enter a Preliminary Injunction to restrain Defendants from continuing to violate their obligations to Baird until a panel of FINRA arbitrators' rule on Baird's request for permanent injunctive relief after an

evidentiary hearing. Further, Baird requests limited expedited discovery in aid of its Motion for Preliminary Injunction; such request will be submitted via a separate motion to the court.

### III.  ARGUMENT AND AUTHORITIES

#### A.  Baird is Entitled to Seek Temporary Injunctive Relief In This Court Pending Arbitration

Even where a dispute (such as this one) is ultimately to be resolved in arbitration, Baird is entitled to injunctive relief pending the outcome in arbitration. Many courts, including this Court, have held that a court can grant injunctive relief in an arbitrable dispute pending arbitration, as long as the prerequisites for injunctive relief are satisfied. *See, e.g., Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1380 (6th Cir. 1995) (the withholdings of injunctive relief would render the process of arbitration meaningless or a hollow formality); *Winston v. Gen. Drivers, Warehousemen & Helpers Loc. Union No. 89*, 879 F. Supp. 719, 725 (W.D. Ky. 1995); *AT&T Mobility Servs. LLC v. Payne*, No. 3:17-CV-00649-CRS, 2018 WL 935441, at *3 (W.D. Ky. Feb. 16, 2018); *Compuserve, Inc. v. Vigny Int'l Fin. Ltd.*, 760 F. Supp. 1273, 1281 (S.D. Ohio 1990); *see also Aggarao v. MOL Ship Mgmt. Co., Ltd*., 675 F.3d 355, 376 (4th Cir. 2012) ("a district court has the discretion to grant a preliminary injunction to preserve the status quo pending the arbitration of the parties' dispute."); *Toyo Tire  Holdings of Ams., Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 980 (9th Cir. 2010) ("the congressional desire to enforce arbitration agreements would frequently be frustrated if the courts were precluded from issuing preliminary injunctive relief to preserve the status quo pending arbitration. . ."). Accordingly, not only is Baird entitled to seek temporary injunctive relief in this court pending arbitration, but this Court also has the authority to grant it.

During their employment with Baird, Defendants expressly promised in their agreements not to retain, use, or disclose confidential or trade secret information or to otherwise solicit Baird's clients governed by the Retirement Agreement.  Defendants, however, violated their obligations to Baird.  Baird does not seek to bar Defendants from building a competing business.  Baird merely seeks to protect its business from Defendants' improper retention, use, and disclosure of confidential and trade secret information and solicitation of its clients.

Baird will sustain immediate and irreparable injury if a temporary restraining order is not issued. As a result of Defendants' violations of their obligations, Baird has suffered and will continue to suffer irreparable harm and is entitled to a *status quo* temporary restraining order and a preliminary injunction until a FINRA arbitration panel can determine Baird's claims for permanent injunctive relief.

### B.    Legal standard

A preliminary injunction is a provisional remedy designed to preserve the status quo pending resolution of the underlying dispute. *Burniac v. Wells Fargo Bank, N.A.,* 810 F.3d 429, 435 (6th Cir. 2016); *Mat. Handling Sys., Inc., v. Cabrera,* 572 F. Supp. 3d 375, 386 (W.D. Ky. 2021); *Beshear v. Goodwood Brewing Co.,* 635 S.W.3d 788, 798 (Ky. 2021). The process for granting a preliminary injunction is less formal and the evidentiary burdens lower than in a trial on the merits. *Mat. Handling Sys., Inc.*, 572 F. Supp. 3d at 386 (internal citations omitted). Further, the movant need not "prove his case in full" to obtain the relief sought. *Certified Restoration Dry Cleaning Network v. Tenke Corp.,* 511 F.3d 535, 542 (6th Cir. 2007).

"In determining whether to issue a preliminary injunction, the district court is required to consider four factors: (1) whether the movant is likely to prevail on the merits; (2) whether the movant would suffer an irreparable injury if the court does not grant a preliminary injunction; (3)

whether a preliminary injunction would cause substantial harm to others; and (4) whether a preliminary injunction would be in the public interest." *Abney v. Amgen, Inc.*, 443 F.3d 540, 547 (6th Cir.2006) (quoting *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 274 F.3d 377, 400 (6th Cir.2001)).  "These factors are not prerequisites that must be met but are interrelated considerations that must be balanced together." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). "For example, the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury the movants will suffer absent the stay." *Ne. Ohio Coal. for Homeless & Serv. Employees Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006).

As established below, the requirements for injunctive relief are met here, and therefore, a preliminary injunction should be issued restraining Defendants from retaining, using, and disclosing Baird's confidential and proprietary information and requiring immediate return of same, and from soliciting Baird's clients to join a competitor. Such an order is necessary in order to preserve the status quo pending arbitration before FINRA.

### C.    Courts Have Uniformly Recognized The Right Of A Securities Firm To Injunctive Relief Under Similar Circumstances

Courts considering circumstances like those here have repeatedly held in favor of entering injunctive relief to protect the misappropriation of confidential information or prohibit the continued solicitation of the former employer's clients prior to an adjudication on the merits. *See, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith,  Inc. v. Salvano*, 999 F.2d 211 (7th Cir. 1993); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dutton*, 844 F.2d 72 (10th Cir. 1986); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048 (4th Cir. 1985); *Merrill Lynch, Pierce,  Fenner & Smith, Inc. v. Stidham*, 658 F. 2d 1098 (5th Cir. 1981). Because so many courts, including this

Court, enforce such restrictions through temporary injunctive relief, Baird's entitlement to such relief at this stage cannot be disputed.

Defendants promised in the Retirement Agreement not to retain, use, or disclose Baird's confidential and proprietary information for accounts governed by the Retirement Agreement, and not to solicit such clients for a one-year period after the termination of their employment. However, Respondents have clearly violated their obligations to Baird. Baird does not seek to bar the individual Defendants from earning a living—Baird is merely attempting to protect its business and clients from improper misappropriation by restraining Defendants from retaining, using, and disclosing Baird's clients' confidential and proprietary information and requiring immediate return of same to preserve the *status quo* pending arbitration.

### D. Baird Satisfies All Requirements for Injunctive Relief

#### 1. Baird Is Likely to Succeed on the Merits

In order to prevail on its request for injunctive relief, the moving party must demonstrate that it has a "reasonable probability" or "strong likelihood" of prevailing on the merits of its claims. *Dinter,* 2022 WL 4534446 at *3; *McHutchison, Inc. v. Eason Horticultural Res., Inc*., Civil Case No. 21-65-DLB-CJS, 2021 WL 2555568 *3 (E.D. Ky. June 22, 2021). However, an applicant for a preliminary injunction is not required to plead and prove a case that would entitle him to relief upon the determination of the merits. *Brake Parts, Inc., v. Lewis,* 443 Fed. App'x 27, 29 (6th Cir. 2011) ("[I]t is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus more deliberate investigation.") (internal citation omitted). Here, Baird has a reasonable likelihood of prevailing on the merits of its claims against Defendants.

Baird is entitled to injunctive relief to prevent the Defendants from continuing to disclose confidential and proprietary documents and information as well as violate their obligations to Baird not to solicit Baird clients. Defendants had access to confidential and proprietary business and financial information concerning, *inter alia*, Baird and its clients, which they expressly agreed not to disseminate or make use of, and to promptly return this information and materials after their employment with Baird terminated. (Rudolph Declaration, ¶ 5). Unfortunately, Defendants still have possession of this information and have not only used it but have also disseminated it.

Federal and State courts in Kentucky have recognized the right of financial services firms to obtain injunctive relief against former employees under similar circumstances. *See, e.g., First Fin. Bank, Nat'l Ass'n v. Williams*, No. 5:19-CV-128-TBR, 2019 WL 4865888, at *1 (W.D. Ky. Oct. 2, 2019); *Stockton Mortg. Corp. v. Bland*, No. 3:22-CV-00036-GFVT, 2022 WL 17836590, at *3 (E.D. Ky. Dec. 21, 2022); *J.P. Morgan Sec. LLC v. Kittell*, 554 F. Supp. 3d 895, 899 (W.D. Ky. 2021).

Kentucky courts enforce restrictive covenants that are "properly tailored." *Hammons v. Big Sandy Claims Serv., Inc.*, 567 S.W.2d 313, 315 (Ky. Ct. App. 1978) ("[I]t has been held in Kentucky that an agreement in restraint of trade is reasonable if, on consideration of the subject, nature of the business, situation of the parties and circumstances of the particular case, the restriction is such only as to afford fair protection to the interests of the covenantee and is not so large as to interfere with the public interests or impose undue hardship on the party restricted."). In this instance, the confidentiality and non-solicitation covenants at issue are plainly "properly tailored." In fact, the confidentiality provisions are <u>required</u> by applicable financial industry rules and regulations; for example, the Gramm-Leach-Bliley Act and its implementing federal regulations, commonly referred to as Regulation S-P, require strict protection of client information.

- 12 -

*See* 17 C.F.R. § 248. Even the fact that an individual is a client of a specific financial institution—here Baird—is protected from disclosure under Regulation S-P. 17 C.F.R. § 248.3.

Kentucky also separately protects employer's trade secrets through the Kentucky Uniform Trade Secrets Act. *See* Ky. Rev. Stat. Ann. § 365.880, *et seq*. ("KUTSA"). Under the KUTSA, a "trade secret" is defined as:

> [I]nformation, including a formula, pattern, compilation, program, data, device, method, technique, or process, that:
>
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
>
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ky. Rev. Stat. Ann. § 365.880(4). Baird's customer contact information falls squarely within these parameters. Based upon these factors, this Court and Courts throughout the country have routinely protected customer information and lists as trade secrets. *See, e.g., Cmty. Ties of Am., Inc. v. NDT Care Servs., LLC*, No. 3:12-CV-00429-CRS, 2015 WL 520960, at *12 (W.D. Ky. Feb. 9, 2015) ("CTA's client list is a trade secret."); *Kovarik v. American Family Insurance Group*, 108 F.3d 962, 966 (8th Cir. 1997); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lovekamp*, 2001 U.S. Dist. LEXIS 26845, at *3 (N.D. Fla. July 16, 2001); *Superior Consultant Co., Inc. v. Bailey*, 2000 U.S. Dist. LEXIS 13051 (E.D. Mich. 2000); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ran*, 67 F.Supp.2d at 764; *Lowry Computer Products, Inc. v. Head*, 984 F. Supp. at 1111. Baird employs reasonable efforts to maintain the confidentiality of its customer records. (Rudolph Declaration, ¶ 6). Specifically, access to the records is restricted to those employees whose jobs require them to refer to this information, duplication of the records is prohibited and there are constant reminders

about the confidential nature of the information. *Id.* Thus, this Court should again find that the misappropriated information constitutes a trade secret[1].

Baird has a legitimate interest in protecting the relationships it has forged with its clients and the confidential client information entrusted to Baird as a result of these relationships. Indeed, Baird's clients—and their information—are its most important assets. In sum, and based on the violations described above and in Darrin Rudolph's Declaration, Baird has made a sufficient showing to establish a likelihood and indeed probability of its ultimate success, and the individual Defendants should not be allowed to continue to violate their obligations and injure their former employer by retaining and using confidential information and soliciting Baird clients.

## 2. No Adequate Remedy at Law Exists and Baird Will Suffer Irreparable Harm in the Absence of an Injunction.

To show irreparable harm, the moving party must show that, absent the relief sought, its interests would be damaged in ways that could not be remedied later on in the legal process or with an award of monetary damages. *Dinter*, 2022 WL 4534446 at *4; *see also Overstreet v. Lexington-Fayette Urban Cty. Gov't,* 305 F.3d 566, 578 (6th Cir. 2022) ("A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages."). That is indeed the case in this matter. Baird has no adequate remedy at law and will be irreparably harmed in the absence of injunctive relief and Defendants' continued improper retention, use, and disclosure of confidential information and trade secrets and solicitation of Baird clients. No adequate remedy at law exists here because it is impossible to quantify the harm for continued retention, use, and disclosure of trade secrets—for which the remedy is return of those

---

[1] The same analysis applies in the context of the Federal analogue, the Defend Trade Secrets Act. 18 U.S.C. § 1836, *et seq*. Under either analysis, Defendants' misappropriated Baird's confidential and their misconduct must be enjoined.

documents and information—and it is further extremely difficult to quantify the future economic losses that Baird will suffer from the loss of its clients and their accounts to a competitor, LPL.

How many of these clients' accounts would have grown in the future, or by how much, Baird cannot precisely calculate. In addition, Baird cannot quantify the loss of client confidence and goodwill that will occur absent an injunction. Another aspect of irreparable harm is that office morale and stability will be jeopardized if Defendants are permitted to continue to violate their agreements with Baird with impunity and to dissipate Baird's goodwill with both its employees and clients.

This Court has repeatedly determined that an actual or potential loss of clients would result in irreparable harm, entitling the Plaintiff to injunctive relief. *Baffert v. Churchill Downs, Inc.*, No. 3:22-CV-123-RGJ, 2023 WL 2089221, at *14 (W.D. Ky. Feb. 17, 2023) ("A plaintiff may demonstrate irreparable harm 'through the loss of customers, goodwill or business.'"); *Michigan Bell Tel. Co. v. Engler*, 257 F.3d 587, 599 (6th Cir. 2001) ("loss of established goodwill may irreparably harm a company."); *Rudd Equip. Co., Inc. v. Volvo Constr. Equip. N. Am., LLC*, No. 3:19-CV-778-DJH-CHL, 2022 WL 1571771, at *2 (W.D. Ky. Mar. 25, 2022) ("Because 'harms to goodwill and competitive position' such as 'lost sales and market share' are not easily calculated, they constitute irreparable harm and are 'appropriate' bases for injunctive relief.").

In addition, a defendant's continued use of misappropriated confidential information results in irreparable harm, entitling the plaintiff to injunctive relief. *See RGIS, LLC v. Gerdes*, 817 F. App'x 158, 163 (6th Cir. 2020) ("[A]ny disclosure of RGIS's trade secrets would harm its 'ability to compete with its competitors.'") (finding irreparable harm); *Church Mut. Ins. Co. v. Smith*, No. 3:14CV-749-H, 2014 WL 12866056, at *10 (W.D. Ky. Nov. 24, 2014) ("These losses

constitute irreparable harm … and will continue so long as … [Defendants] misappropriate [Plaintiff's] trade secrets.").

Here, it is impossible to quantify the harm for continued misappropriation of trade secrets, and extremely difficult to quantify the future economic losses that Baird will suffer from the loss of its clients to a competitor or to quantify the loss of client confidence that will occur absent an injunction, especially when, as here, clients have already complained about the misappropriation of their data and have incorrectly inferred that it is Baird's policies, not Defendants' wrongdoing that has resulted in such misappropriation. For the reasons set forth above, Baird has no adequate remedy at law and the injury Baird faces is irreparable and cannot later be compensated with money damages.

### 3. **The Threatened Injury To Baird Outweighs The Potential Harm To Defendant.**

The risk of irreparable harm to Baird easily outweighs any injury to Defendants. On the one hand, an injunction would safeguard Baird's trade secrets, its clients' confidential information, its goodwill and relationships with its clients, business reputation, the integrity and viability of its offices in Kentucky, and its common law and contractual rights. An injunction would also serve to discourage Baird's current employees and contractors from breaching their contractual obligations, their fiduciary duties and their duties of loyalty, in addition to deterring Baird's competitors from inducing Baird employees to do so.

By contrast, the individual Defendants have deliberately breached their commitments to Baird by failing and refusing to return confidential information and trade secrets, improperly accessing and using that information to solicit Baird clients both before and after resigning, and disclosing those trade secrets and confidential information to third parties. As the Eastern District

of Michigan has observed in a case similar to the instant one: "[t]o deny the injunctive relief [the former employer] now seeks . . . would amount to a nullification of defendants' employment agreements . . . and create an incentive for other brokers to violate their agreements without fear of reprisal." *Ran*, 67 F.Supp.2d at 780.

Preventing Defendants from continuing to retain, use, and disclose Baird's confidential information and trade secrets does not harm Defendants at all—they are not entitled to such information in the first place. An order enjoining the individual Defendants from using Baird confidential client information does not put any more burden on them than do their contracts. The loss to Baird, therefore, greatly outweighs any potential harm to any Defendant.

Importantly, Defendants will not be precluded from engaging in their profession. The injunction sought merely precludes Defendant from doing so in violation of their obligations to Baird. The injunction will only require Defendants to compete fairly. Therefore, the balancing of the equities lies in Baird's favor; thus, an injunction should be granted.

### 4.    <u>An Injunction Will Not Harm The Public Interest</u>

Finally, the public interests at issue here are those of enforcing reasonable contracts and protecting a business's investment in its development. Courts have consistently recognized the public's interest in the enforcement of reasonable contracts and in "the maintenance of standards of commercial ethics." Uniform Law Comment, Uniform Trade Secrets Act (quoting *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470 (1974)). Accordingly, the public interest is served by issuance of the preliminary injunctive relief that Baird seeks. *Owensboro Specialty Polymers, Inc. v. Daramic, LLC*, No. 4:20-CV-163-JHM, 2020 WL 13577473, at *2 (W.D. Ky. Sept. 25, 2020) ("Public interest favors the enforcement of valid contracts"). The Sixth Circuit has stated that the public has an interest in "hold[ing] Defendants to the terms of the bargain they entered into."

- 17 -

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007) (granting a preliminary injunction); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kramer*, 816 F. Supp. 1242, 1248 (N.D. Ohio 1992) ("To deny injunctive relief in this case would . . . jeopardize the integrity of the securities industry and to the detriment of the public interest [and] . . . would cast doubt on the integrity of contractual agreements").

As a court in Illinois observed in a case involving a securities firm's agreements with its advisors, "[t]he public has an interest in preventing unfair competition, commercial piracy, misleading solicitations, and in safeguarding the confidentiality of financial records." *IDS Life Insurance Co. v. SunAmerica, Inc.*, 958 F. Supp. 1258, 1282 (N.D. Ill. 1997), *aff'd in part, vac. in part on other grounds*, 136 F.3d 537 (7th Cir. 1998). The rationale behind these cases and countless others is that a former employee should not be able to injure his former employer and profit from his or her wrongdoing. The analysis and result should be the same here.

Ultimately, the public interest is only served by ensuring the safety of confidential client information, especially given that at least one client has already complained about this issue. The investing public will only be protected by ensuring their information is returned and secure.

## IV.  CONCLUSION

Baird respectfully requests that the Court enter a Preliminary Injunction requiring Defendants to adhere to their obligations to Baird, require them to return and permanently dispossess themselves of all Baird proprietary or confidential/trade secret documents or information, and prohibit them from further soliciting Baird's clients in order to preserve the *status quo* until a panel of FINRA arbitrators rule on Baird's request for permanent injunctive relief after an evidentiary hearing.

*[Signature Block on Page Below]*

- 18 -

Respectfully submitted,

SHUMAKER, LOOP & KENDRICK, LLP
240 South Pineapple Avenue
Post Office Box 49948
Sarasota, Florida 34230-6948
(941) 366-6660
(941) 366-3999 (fax)

DENTONS BINGHAM GREENEBAUM LLP
3500 PNC Tower
101 S. Fifth Street
Louisville, KY 40202
(502) 587-3543
(502) 540-2199 (fax)

By: _/s/ Jarrod J. Malone_____
    Michael S. Taaffe, Esq.
    Fla. Bar No. 490318 (pro hac vice pending)
    Jarrod J. Malone, Esq. Fla. Bar No. 10595
    (pro hac vice pending)
    Jeremy M. Halpern, Esq. Fla. Bar No. 85942
    (pro hac vice pending)
    James E. Fanto, Esq. Fla. Bar No. 1004144
    (pro hac vice pending)

By: _/s/ Aaron W. Marcus_____
    Aaron W. Marcus (KBA # 96178)
    aaron.marcus@dentons.com

*Attorneys for Plaintiff, Robert W. Baird & Co. Incorporated*

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on September 17, 2024 on all CM-ECF Counsel of Record and via U.S. Mail on Defendants as follows:

    Nathan D Richey
    385 OJ Edmonds Road
    Alvaton, KY 42122

    Joshua Marson
    900 Smith Ct.
    Bowling Green, KY 42103

    Andrew Boyles
    5369 Amber Creek Lane
    Bowling Green, KY 42101

    _/s/ Aaron W. Marcus_____
    COUNSEL FOR PLAINTIFF