UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

**ROBERT W. BAIRD & CO.,**
**INCORPORATED,**

            **Plaintiff,**

    v.

**NATHAN DREW RICHEY, JOSHUA J.**
**MARSON, and ANDREW DOUGLAS**
**BOYLES,**

           **Defendants.**

Case No. 1:24-cv-00115-DJH

<u>**DECLARATION OF DARRIN RUDOLPH IN SUPPORT OF**</u>
<u>**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**</u>

DARRIN B. RUDOLPH declares under penalty of perjury that the following is true and correct and states as follows:

1.      I am over 21 years of age and am fully competent to make the statements contained in this Declaration based upon my personal knowledge.

2.      I am employed by the Plaintiff Robert W. Baird & Co., Inc. ("**Baird**") and my role is Market Director. I was the Market Director in charge of, among other locations, the Bowling Green, Kentucky branch office at the time of the departure of defendants Nathan Drew Richey ("**Richey**"), Joshua J. Marson ("**Marson**"), and Andrew Douglas Boyles ("**Boyles**"). In my role as Market Director, the Branch Manager of the Bowling Green, Kentucky branch office reports directly to me. Presently, that Branch Manager is Shawn Perry ("**Perry**").

3.      As a Market Director, I am familiar with the assets under management in the branch offices I oversee. I am also responsible for the advisors I oversee and ensure they are in compliance with Baird policies, their contractual obligations, and industry standards.

4.      As part of their official duties at Baird, defendants Richey, Marson, and Boyles had

access to extensive confidential financial records and information about Baird's clients and accounts, including information about each client's investment needs and personal information. Such information is not publicly available and cannot be duplicated. It is proprietary and valuable information and would be especially useful to a competitor.

5.      Baird employs reasonable measures to protect its confidential information including, for example, restricting access to those employees whose jobs require them to refer to such information, prohibiting duplication of sensitive materials, providing constant reminders about the confidential nature of the information, and utilizing confidentiality agreements.

**Retirement Agreement**

6.      Prior to 2021, defendants Richey, Marson, and Boyles operated as part of a team at Baird with Perry and former Baird advisor Michael Jennings ("**Jennings**"). The five advisors serviced clients held under the Rep Code C701, and distributed the compensation earned from Rep Code C701 using a percentage split.

7.      Defendants were participants of a retirement agreement (the "**Retirement Agreement**") executed by all of Richey, Marson, Boyles, Perry, and retiring advisor Jennings. The Retirement Agreement was executed in April 2021 and contains various restrictive covenants running in favor of Baird, including confidentiality, non-solicitation of clients, and non-solicitation of Baird affiliates and employees.

8.      A true and correct copy of the Retirement Agreement is attached hereto as **Exhibit 1**.

9.      Jennings (the "**Retiring FA**") began the process of retirement in April 2021 by entering into the Retirement Agreement with Richey, Marson, Boyles, and Perry, as well as Baird.

10.      By entering into the Retirement Agreement, each of Richey, Marson, Boyles, and Perry (the "**Successor FAs**") would be entitled to receive an increased percentage payout of the

accounts under Red Code C701 (the accounts being the Retirement Agreement Accounts, as defined above). The payout percentage for accounts under Rep Code C701 would increase on July 1 of each year between 2021 and 2023. (Retirement Agreement, Paragraph 20). Upon the end of Jennings' Retirement on July 1, 2024, Jennings' remaining 13% distribution was split equally between the Successor FAs.

11.    The parties entered into the Retirement Agreement with the intention of exchanging various consideration: (a) Jennings agreed to stop actively servicing clients and reduce his payout percentage as to the Retirement Agreement Accounts over the course of a 3-year period, eventually giving up his entire payout percentage as of July 1, 2024; (b) Baird agreed to pay Jennings a Retirement Bonus of $560,500, and agreed to permit the payout percentage modifications as requested by the other parties; and (c) Perry and Defendants agreed to service the Retirement Agreement Accounts at Baird and obtain a higher payout on such accounts, and did so by submitting to the restrictive covenants governing these accounts.

12.    After the Retirement Agreement was executed, Baird paid Jennings a Retirement Bonus of $560,500 and implemented the payout percentage modifications as requested by the Successor FAs.

13.    Baird relied upon the Defendants to continuously service the accounts to offset this up-front.

14.    In exchange for the rights to receive, *inter alia,* this increased percentage payout, the Successor FAs agreed to various restrictions and covenants in the Retirement Agreement.

15.    Section 26 of the Retirement Agreement governs confidentiality. The provision states in relevant part:

**26. Confidentiality of Client Information:** (a) For the protection of the Client Accounts and Baird's business and consistent with Baird's Privacy Policy, the Successor FA(s) and the Retiring FA shall keep strictly confidential all Confidential Information relating to the Client Accounts and Baird's business and shall use such information solely to service the Client Accounts or to perform their duties as Baird employees. "Confidential Information" shall include without limitation all nonpublic personal information concerning the Client Accounts as the term "nonpublic personal information" is used and defined in SEC Regulation S-P, 17 C.F.R. Part 248, including but not limited to client names, addresses, telephone numbers, e-mail addresses, and the financial information of any Client Account, and which may include but is not limited to information shown by new account forms, confirmations, holding records and account statements. [...]

(b) In order to protect Baird's Confidential Information, the Successor FA(s) and Retiring FA agree as follows:

1. Regarding any "Confidential Information" that constitutes Baird's trade secrets under the Wisconsin Uniform Trade Secrets Act or "nonpublic personal information" of Baird clients as defined by and used in SEC Regulation S-P, Successor FA(s) and Retiring FA shall not disclose any such Confidential Information to a third party, including but not limited to a competitor of Baird, during the period of his or her employment with Baird or at any time thereafter unless so authorized by Baird.

[...]

3. Upon departure of a Successor FA from Baird, the Successor FA shall surrender and deliver to Baird, the originals and all copies of all records, books, notes, computer discs and storage devices, correspondence, memoranda and documents of any nature which are in his/her possession and/or control which contain Confidential Information relating to the Client Accounts.

16.    Section 28 of the Retirement Agreement governs non-solicitation. The provision states in relevant part:

**28. Non-Solicitation by Successor FAs Assigned to Client Accounts:** The Successor FA(s) assigned to the Client Accounts each agree that, in exchange for the production sharing received under this Agreement, they shall not, after the termination of employment from Baird, for any reason whatsoever (including voluntary or involuntary termination), on behalf of any person, firm, corporation or entity other than Baird, and by any means:

(a) attempt, directly or indirectly, to induce the termination of any client relationship with respect to any current Baird Client who has a Client Account subject to this Agreement which has been assigned to or serviced in any way by the Successor FA on behalf of Baird;

4

(b) use any Confidential Information to solicit or contact any current Baird Client who has a Client Account subject to this Agreement; or

(c) solicit or in any way assist (directly or indirectly) in the solicitation of the transfer or opening of an account by, or the sale of securities to or from, any current Baird Client who has a Client Account subject to this Agreement assigned to the Successor FA in accordance with this Agreement.

This provision shall apply during the Retirement Period and for one (1) year following the Retirement Period End Date. The Successor FA(s) each acknowledge that he/she has a relationship with and/or has obtained special knowledge about the Baird Clients who have a Client Account subject to this Agreement and that the period of restriction in this Paragraph is reasonable with respect to the Client Accounts. The Successor FA(s) acknowledge that this Retirement Agreement is excluded from the protections afforded by the Protocol for Broker Recruiting as it relates to restrictive covenants.

17.    The Protocol for Broker Recruiting (the "**Protocol**") is an intra-industry agreement governing the use of client information when registered representatives move between firms that are signatories to the Protocol. Section 30 of the Retirement Agreement governs the inapplicability of the Protocol for Broker Recruiting to the accounts governed by the Retirement Agreement. The provision states:

**30. Agreement outside Protocol.** Retiring FA and Successor FA acknowledge that (a) their obligations to Baird as it relates to the paragraphs containing Non-Solicitation and Confidentiality of Information paragraphs are not governed by the Protocol for Broker Recruiting ("Protocol"), and impose on them greater obligations than are provided by the Protocol, as to Client Accounts, and (b) that their voluntarily undertaking of the restrictions and obligations as it relates to confidentiality and non-solicitation is in exchange for their receipt of valuable benefits under this Agreement to which they would not otherwise be entitled.

18.    Finally, section 34 of the Retirement Agreement provides the right to injunctive relief in the event of a breach and the right to recover attorneys' fees. The provision states:

**34. Right to Injunction.** In the event of a breach of any of the provisions contained in this Agreement, the parties agree that money damages will not be an adequate remedy to compensate, or to protect the business of Baird and Baird shall be entitled to the issuance by a court of a temporary restraining order and injunctive relief to prevent or terminate any anticipated or actual breach of the Agreement. Each FA further agrees to reimburse Baird for its reasonable costs, including attorney's fees, related to or arising out of its efforts to enforce the terms of this Agreement.

5

**Departure to the Competition**

19.    Defendants Richey, Marson, and Boyles ("**Defendants**") abruptly resigned from Baird on July 31, 2024, immediately joined competitor Stifel, Nicolaus & Company, Incorporated ("**Stifel**"), and begin soliciting Baird accounts.

20.    At the time of Defendants' departure, Rep Code C701 had approximately $800 million in assets under management and generated roughly $5.6 million in annual revenue.

21.    On July 31, 2024, Branch Manager Perry was out of the office for a pre-scheduled vacation lasting several weeks.  Defendants left notices of resignation that were directed to the attention of Perry.  Those notices were forwarded to me, which I reviewed on July 31, 2024.

22.    A true and correct copy of the resignation notices is attached hereto as **Exhibit 2**.

23.    Upon Defendants' departure to the competition, Defendants created and took a 23-page "Protocol List" which contains details of over 1,400 Baird accounts, including account descriptions, client names, addresses, telephone numbers, and e-mail addresses.  Defendants took a copy of this list with them to their new employer and left a copy of the list with Baird as part of their notices of resignation.

24.    In their resignation letters, Defendants notified Baird that they intended to invoke the Protocol for Broker Recruiting and that Defendants intended to solicit such clients.

25.    When Baird examined Defendants' list and compared the list of clients against the list of clients governed by the Retirement Agreement, Baird quickly learned that Defendants had included information for approximately 900 accounts governed by the Retirement Agreement.

26.    Defendants' acts in taking this information and soliciting these customers violated the Retirement Agreement.

27.    Shortly after Defendants' departure to Stifel, Baird was sent copies of solicitation

6

letters and materials sent by Defendants. These materials included pre-recorded videos inviting the Baird clients to end their relationship with Baird and move to Stifel.

28.     A true and correct copy of one such communication received by a Baird Customer is attached hereto as **Exhibit 3**.

29.     A true and correct copy of the BrokerCheck Report for defendant Nathan Drew Richey is attached hereto as **Exhibit 4**.

30.     A true and correct copy of the BrokerCheck Report for defendant Joshua J. Marson is attached hereto as **Exhibit 5**.

31.     A true and correct copy of the BrokerCheck Report for defendant Andrew Douglas Boyles is attached hereto as **Exhibit 6**.

32.     Baird promptly contacted Defendants about their violations and demanded that Defendants immediately remedy these issues. Baird demanded that the Defendants immediately return all information that was improperly taken, immediately destroy any copies of such information that were retained within the computer systems of their new employer, and immediately cease soliciting the customers who were governed by the Retirement Agreement.

33.     A true and correct copy of the communication sent by counsel for Baird on August 13, 2024 is attached hereto as **Exhibit 7**.

34.     Defendants acknowledged that some of the names on Defendant's list were those who they did not service. However, Defendants flatly rejected Baird's demands that Defendants comply with the terms of the Retirement Agreement.

35.     Baird sent additional correspondence to Defendants on August 19, 2024 and demanding that Defendants immediately complete the tasks identified in the original August 13, 2024 demand.

36.     A true and correct copy of the communication sent by counsel for Baird on August 19, 2024 is attached hereto as **Exhibit 8**.

37.     Baird filed a Statement of Claim against all Defendants contemporaneously with my execution of this Declaration.  The Statement of Claim was filed based upon Baird's good faith belief that Defendants had willfully taken Confidential Information and had solicited customers governed by the Retirement Agreement under the false guise that the Protocol governed Defendants' transition to a competitor.

38.     As of the date of this declaration, Defendants have failed to return and improperly retained confidential documents and information belonging to Baird which they misappropriated to solicit their former clients.

39.     To date, Baird has lost accounts that generate over $1 million in annual production as a result of the Defendants' improper taking and use of the Confidential Information, and their solicitation of Baird clients who are governed by the restrictive covenants of the Retirement Agreement.

40.     A true and correct copy of the current version of FINRA Rule 13804 is attached hereto as **Exhibit 9**.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

                              Darrin B. Rudolph
                              Dated: September  11 , 2024

# EXHIBIT 1

DocuSign Envelope ID: 6A44D147-D53F-4768-9589-BB980F90F0D0



## Robert W. Baird & Co. Incorporated
## FINANCIAL ADVISOR RETIREMENT AGREEMENT

This Financial Advisor Retirement Agreement ("Agreement") is effective as of the date indicated herein and is between Robert W. Baird & Co. Incorporated ("Baird" or "the firm") and each of the Financial Advisors ("FAs") listed below.  In consideration of the compensation payable hereunder, and other good and valuable consideration, the parties hereby agree as follows:

1. **Name of Retiring Financial Advisor and rep code:**  (also referred to herein as the "Retiring FA")

   **Michael Jennings, C702**

2. **Name(s) of Successor FA(s):**  The FA(s)/Team (also referred to herein as the "Successor FA(s)") who are teaming with the Retiring FA during the Pre-Retirement period and will be ultimately receiving an assignment of Client Accounts from the Retiring FA at the Retirement Period start date:

   **Shawn Perry, C703**
   **Nathan (Drew) Richey, C705**
   **Joshua Marson, C707**
   **Andrew Boyles, C710**

3. REDACTED

4. REDACTED

5. **Retirement Period Start Date**:  **July 1ˢᵗ, 2021**

   **Retirement Period End Date**: **June 30ᵗʰ, 2024**

6. REDACTED

7. **Accounts Assigned to FA Team:**  The accounts that are subject to this Agreement shall be referred to as the "Client Accounts."  All of the accounts of the retiring FAs shall be assigned to the Successor FA or Team and are subject to this Agreement.  Unless a separate addendum is attached which describes the accounts which are associated with this Agreement, Baird assumes that all accounts will be shared as outlined in this agreement.

8.  **Rep Code:**  The FA Team shall use the following Team joint rep code: **C701**

9. REDACTED

Copyright 2006 Robert W. Baird & Co. 777 E. Wisconsin Ave. Milwaukee, WI 53202
First Use: 4/2015

DocuSign Envelope ID: 6A44D147-D53F-4768-9589-BB980F90F0D0

FA Retirement Agreement • Page 2 of 9

**REDACTED**

10.  **REDACTED**

11. **Retirement Anniversary Dates:**  Each of the successive dates that are one, two, etc. full years after the Retirement  Date, up through the **seventh** Retirement Anniversary Date of **6/30/2021** (the last being the "Final Retirement Anniversary Date") is a "Retirement Anniversary Date."

12. **Right to Service Client Accounts**.
    a.  The Successor FA agrees that being assigned the rights to service the Client Accounts is a valuable economic benefit, including but not limited to opportunity and training.
    b.  The Successor FA agrees that if he voluntarily terminates his employment with Baird before the Final Retirement Anniversary Date, Baird will suffer damages that may be difficult to quantify at the time of the violation, including, but not limited to: costs associated with maintaining, restoring or repairing Baird's relationship with clients; revenue lost from client reductions in use of Baird services; costs associated with replacing employees, including recruiting, hiring and training replacement employees, and lost productivity.  Therefore Successor FA agrees to the following liquidated damages in Subparagraph (C).
    c.  Successor FA agrees, if he voluntarily terminates employment with Baird for any reason except death before the Final Retirement Anniversary Date, to pay Baird as liquidated damages the sum of $**80,071.43** ***times*** the number of Anniversary Dates remaining after the Successor FA's voluntary termination date through the Final Retirement Anniversary Date.

13. **Retirement Bonus:** In recognition of Retiring FA's past services, and in exchange for Retiring FA's undertaking obligations under this Agreement, Baird will award Retiring FA a bonus of $**560,500**, less applicable withholding and deductions, provided he is an employee in good standing at the time of his retirement.

14.  **REDACTED**

Copyright 2015 Robert W. Baird & Co. 777 E. Wisconsin Ave. Milwaukee, WI 53202
First Use: 4/2015

DocuSign Envelope ID: 6A44D147-D53F-4768-9589-BB980F90F0D0

FA Retirement Agreement • Page 3 of 9

15.  **REDACTED**

16.  **REDACTED**

17.  **REDACTED**

18.  **REDACTED**

19.  **REDACTED**

20. **Production Sharing During Retirement Period:** During the Retirement Period, the Retiring FA's consulting fee shall be in the form of a share of the gross production with the Successor FA(s) assigned to the Client Accounts subject to this Agreement as follows:



### C701

| Financial Advisor | Rep Code | % of Gross Production Year 1 7/1/2021-6/30/2022 | % of Gross Production Year 2 7/1/2022-6/30/2023 | % of Gross Production Year 3 7/1/2023-6/30/2024 |
|---|---|---|---|---|
| Michael Jennings | C702 | 16.0% | 15.0% | 13.0% |
| Shawn Perry | C703 | 45.9% | 46.5% | 47.7% |
| Nathan (Drew) Richey | C705 | 26.0% | 26.4% | 27.2% |
| Joshua Marson | C707 | 7.1% | 7.1% | 7.1% |
| Andrew Boyles | C710 | 5.0% | 5.0% | 5.0% |

Baird and the Successor FA(s) shall have no responsibility to maintain any level of production with respect to any of the Client Accounts. Any obligation to make payments under this Agreement arises only when and if production is generated by any of the Client Accounts. There will be no sharing of production after the Retirement Period End Date of 6/30/2024. All production after the Retirement Period End Date will be allocated to the Successor FAs. With respect to insurance and annuity contract trails, the carrier may

DocuSign Envelope ID: 6A44D147-D53F-4768-9589-BB980F90F0D0

FA Retirement Agreement • Page 4 of 9

opt to discontinue payout to the Retiring FA, once the Retiring FA's licenses have terminated. The Retiring FA is encouraged to consider this possibility when negotiating payout.

Further, if the employment of the Retiring FA terminates prior to the Retirement Date, as a result of his resignation to join a competitor, the Retiring FA shall no longer share in any of the production from the Client Accounts for any period following such resignation.

21.  **REDACTED**

22.  **Payout to Successor FA(s):** The Successor FA(s)' payout is always determined by the Financial Advisor Compensation Plan in place at the time.  The Retiring FA's payout rate shall have no effect on the payout rate of the Successor FA(s).

23.  **REDACTED**

24.  **REDACTED**

25.  **REDACTED**

26.  **Confidentiality of Client Information:**

(a)  For the protection of the Client Accounts and Baird's business and consistent with Baird's Privacy Policy, the Successor FA(s) and the Retiring FA shall keep strictly confidential all Confidential Information relating to the Client Accounts and Baird's business and shall use such information solely to service the Client Accounts or to perform their duties as Baird employees. "Confidential Information" shall include without limitation all nonpublic personal information concerning the Client Accounts as the term "nonpublic personal information" is used and defined in SEC Regulation S-P, 17 C.F.R. Part 248, including but not limited to client names, addresses, telephone numbers, e-mail addresses, and the financial information of any Client Account, and which may include but is not limited to information shown by new account forms, confirmations, holding records and account statements. "Confidential Information" also includes Baird's trade secrets and nonpublic and proprietary information about Baird's business, compensation, pricing, business strategies, business systems, marketing strategies, investment models and strategies, and clients and prospects.

DocuSign Envelope ID: 6A44D147-D53F-4768-9589-BB980F90F0D0

FA Retirement Agreement • Page 5 of 9

(b)  In order to protect Baird's Confidential Information, the Successor FA(s) and Retiring FA agree as follows:

1.  Regarding any "Confidential Information" that constitutes Baird's trade secrets under the Wisconsin Uniform Trade Secrets Act or "nonpublic personal information" of Baird clients as defined by and used in SEC Regulation S-P, Successor FA(s) and Retiring FA shall not disclose any such Confidential Information to a third party, including but not limited to a competitor of Baird, during the period of his or her employment with Baird or at any time thereafter unless so authorized by Baird.

2.  Regarding all other Confidential Information, Successor FA(s) and Retiring FA shall not disclose such Confidential Information to any third party, including but not limited to a competitor of Baird, during the period of his or her employment with Baird and for twenty-four (24) months after termination of the FA's employment with Baird unless so authorized by Baird.

3.  Upon departure of a Successor FA from Baird, the Successor FA shall surrender and deliver to Baird, the originals and all copies of all records, books, notes, computer discs and storage devices, correspondence, memoranda and documents of any nature which are in his/her possession and/or control which contain Confidential Information relating to the Client Accounts.

27.  **REDACTED**

28.  **Non-Solicitation by Successor FAs Assigned to Client Accounts:** The Successor FA(s) assigned to the Client Accounts each agree that, in exchange for the production sharing received under this Agreement, they shall not, after the termination of employment from Baird, for any reason whatsoever (including voluntary or involuntary termination), on behalf of any person, firm, corporation or entity other than Baird, and by any means: (a) attempt, directly or indirectly, to induce the termination of any client relationship with respect to any current Baird Client who has a Client Account subject to this Agreement which has been assigned to or serviced in any way by the Successor FA on behalf of Baird; (b) use any Confidential Information to solicit or contact any current Baird Client who has a Client Account subject to this Agreement; or (c) solicit or in any way assist (directly or indirectly) in the solicitation of the transfer or opening of an account by, or the sale of securities to or from, any current Baird Client who has a Client Account subject to this Agreement assigned to the Successor FA in accordance with this Agreement. This provision shall apply during the Retirement Period and for one (1) year following the Retirement Period End Date.  The Successor FA(s) each acknowledge that he/she has a relationship with and/or has obtained special knowledge about the Baird Clients who have a Client Account subject to this Agreement and that the period of restriction in this Paragraph is reasonable with respect to the Client Accounts.  The Successor FA(s) acknowledge that this Retirement Agreement is excluded from the protections afforded by the Protocol for Broker Recruiting as it relates to restrictive covenants.

DocuSign Envelope ID: 6A44D147-D53F-4768-9589-BB980F90F0D0

FA Retirement Agreement • Page 6 of 9

29. **Compensatory Damages**:

    (a) Retiring and Successor FAs agree that if any of them violates any provision of the Non-Solicitation and/or Confidentiality of Client Information paragraphs, Baird will suffer damages including, but not limited to: costs associated with investigating, monitoring, or remedying the misuse of Confidential Information; costs associated with maintaining, restoring or repairing Baird's relationship with clients; revenue lost from client assets transferred from Baird or diverted from Baird's retail business to an investment advisory firm; revenue lost from client reductions in use of Baird services; costs associated with replacing employees, including recruiting, hiring and training replacement employees, and lost productivity.

    (b) Therefore Retiring and Successor FA agree as follows:

        1. If Retiring FA violates any provision of the Non-Solicitation paragraph, Retiring FA will pay Baird compensatory damages caused by Retiring FA's violation of this non-solicitation provision.

        2. If Successor FA violates any provision of Non-Solicitation paragraph, Successor FA will pay Baird compensatory damages caused by Successor FA's violation of the non-solicitation provision.

30. **Agreement outside Protocol.** Retiring FA and Successor FA acknowledge that (a) their obligations to Baird as it relates to the paragraphs containing Non-Solicitation and Confidentiality of Information paragraphs are not governed by the Protocol for Broker Recruiting ("Protocol"), and impose on them greater obligations than are provided by the Protocol, as to Client Accounts, and (b) that their voluntarily undertaking of the restrictions and obligations as it relates to confidentiality and non-solicitation is in exchange for their receipt of valuable benefits under this Agreement to which they would not otherwise be entitled.

31. **REDACTED**

32. **REDACTED**

33. **REDACTED**

DocuSign Envelope ID: 6A44D147-D53F-4768-9589-BB980F90F0D0

FA Retirement Agreement • Page 7 of 9

34. **Right to Injunction:** In the event of a breach of any of the provisions contained in this Agreement, the parties agree that money damages will not be an adequate remedy to compensate, or to protect the business of Baird and Baird shall be entitled to the issuance by a court of a temporary restraining order and injunctive relief to prevent or terminate any anticipated or actual breach of the Agreement.  Each FA further agrees to reimburse Baird for its reasonable costs, including attorneys' fees, related to or arising out of its efforts to enforce the terms of this Agreement.

35. **Arbitration:** Any controversy or dispute arising between any of the parties regarding this Agreement or arising out of my employment with Baird, including, but not limited to common law claims for breach of contract or tort, wage and hour claims and/or statutory discrimination claims shall be submitted for arbitration before the Financial Industry Regulatory Authority ("FINRA"), in accordance with its arbitration rules.  The parties further agree, however, that Baird may apply for, and obtain from any state or federal court appropriate temporary injunctive relief prohibiting the violation of the terms of this Agreement, and may do so pending the convening of an arbitration panel.  Judgment upon the award rendered by the arbitration panel may be entered in any court having jurisdiction.

36. **Entire Agreement:** This Agreement contains the entire agreement and understanding of the parties.  Any and all prior discussions, negotiations and understandings are hereby merged into this Agreement; this Agreement replaces and supersedes any and all prior retirement agreements.  However, this Agreement does not replace or supersede any written agreements with Baird other than prior retirement agreements, including but not limited to Team Agreements, Promissory Notes and FA Trainee (or Associate) Agreements.

37. **Waiver:** A waiver by Baird of any breach of any provision or condition of this Agreement shall not be deemed a waiver of any other provisions or conditions at the same or any other time.

38. **Severability:**     If any part or provision of this Agreement is found by any court to be void, unenforceable or invalid, for any reason whatsoever, the remainder of this Agreement shall remain in full force and effect.

DocuSign Envelope ID: 6A44D147-D53F-4768-9589-BB980F90F0D0

FA Retirement Agreement • Page 8 of 9

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement on the date(s) written below.

### RETIRING FINANCIAL ADVISOR:

Date: 4/23/2021

DocuSigned by:
*Michael Jennings*

Michael Jennings
Rep Code: C702

### SUCCESSOR FINANCIAL ADVISORS:

Date: 4/23/2021

DocuSigned by:
*Shawn Perry*

Shawn Perry
Rep Code: C703

Date: 4/23/2021

DocuSigned by:
[signature]

Nathan (Drew) Richey
Rep Code: C705

Date: 4/23/2021

DocuSigned by:
*Joshua Marson*

Joshua Marson
Rep Code: C707

Date: 4/23/2021

DocuSigned by:
*Andrew Boyles*

Andrew Boyles
Rep Code: C710

**This Agreement is subject to the agreement and approval the PWM Leadership Team, Branch Manager, and Market Director**

Date: 4/28/2021

DocuSigned by:
[signature]

Chris Russell
Market Director

Copyright 2015 Robert W. Baird & Co. 777 E. Wisconsin Ave. Milwaukee, WI 53202
First Use: 4/2015

Form: TEAM
Rev: 2018

DocuSign Envelope ID: 6A44D147-D53F-4768-9589-BB980F90F0D0

FA Retirement Agreement • Page 9 of 9

Date:  4/28/2021

*Carol Moser*

DocuSigned by:

D09C2CE50E21428...

Director PWM Teams Consulting
Carol Moser

# EXHIBIT 2

July 31, 2024


Shawn Perry
Robert W. Baird & Company
360 8th Avenue
Suite 211
Bowling Green KY 42101

Re: Resignation from Robert W. Baird Effective July 31, 2024

Dear Shawn Perry:

Effective today, Wednesday, July 31, 2024, I hereby resign my position as a Financial Advisor at Robert W. Baird ("Baird") Bowling Green, Kentucky office. My new contact information is: Stifel, 1131 Fairview Avenue, Suite 202, Bowling Green KY 42103, (270) 418-2118. My email address drew.richey@stifel.com.

I am resigning to join Stifel, Nicolaus & Company a signatory to the "Protocol" and as such I have only retained client contact information for those clients I intend to solicit as permitted by the Broker Protocol. I have attached a copy of those clients' information to this letter.

I am aware of my obligation to repay my outstanding promissory notes. As of June 30, 2024 the outstanding balance was $2,437.75 which I am enclosing a check for. This does not account for the July 2024 forgiveness so this amount should be adequate for the outstanding balance and any accrued interest. I will reconcile this if made aware of any discrepancy.

You have my permission, and my request, to please provide my clients with this information. As you are aware, FINRA Reg. Notice 19-10 (a copy of which is attached) reminds member firms to: 1. inform customers that they may transfer their assets to another firm or have their assets serviced by a different representative, in addition to giving clients the option to retain their assets at their current firm; and 2. provide customers with contact information for their departing representative, including phone number, e-mail, and mailing address.

Additionally, I am leaving payment in the amount of $96,406 to make Baird whole for the damages outlined in Paragraph 12, Section C of the Michael Jennings Retirement Agreement signed April 23, 2021. Paragraph 12, Section C states that Baird is due damages in the amount of $80,071.43 times the number of remaining Anniversary Dates through the seventh retirement anniversary date from 06/30/2021. As of this letter, there are four (4) remaining anniversary dates resulting in a total amount due to Baird equal to $320,285.72. Under the C701 rep code which The Retirement Agreement is subject to, I currently hold a stake of 30.1% in such client accounts. Therefore, this payment represents the damages owed by me personally.

Thank you, **in** advance, for your cooperation and compliance with FINRA regulations.

**Yours truly,**

Nathan D. Richey

**Enclosures**

July 31, 2024

Shawn Perry
Robert W. Baird & Company
360 8th Avenue
Suite 211
Bowling Green KY 42101

Re: Resignation from Robert W. Baird Effective July 31, 2024

Dear Shawn Perry:

Effective today, Wednesday, July 31, 2024, I hereby resign my position as a Financial Advisor at Robert W. Baird ("Baird") Bowling Green, Kentucky office. My new contact information is: Stifel, 1131 Fairview Avenue, Suite 202, Bowling Green KY 42103, (270) 418-2118. My email address is andrew.boyles@stifel.com.

I am resigning to join Stifel, Nicolaus & Company a signatory to the "Protocol" and as such I have only retained client contact information for those clients I intend to solicit as permitted by the Broker Protocol. I have attached a copy of those clients' information to this letter.

I am aware of my obligation to repay my outstanding promissory notes. As of June 30, 2024 the outstanding balance was $10,833.27 which I am enclosing a check for. This does not account for the July 2024 forgiveness so this amount should be adequate for the outstanding balance and any accrued interest. I will reconcile this if made aware of any discrepancy.

You have my permission, and my request, to please provide my clients with this information. As you are aware, FINRA Reg. Notice 19-10 (a copy of which is attached) reminds member firms to: 1. inform customers that they may transfer their assets to another firm or have their assets serviced by a different representative, in addition to giving clients the option to retain their assets at their current firm; and 2. provide customers with contact information for their departing representative, including phone number, e-mail, and mailing address.

Additionally, I am leaving payment in the amount of $29,786.57 to make Baird whole for the damages outlined in Paragraph 12, Section C of the Michael Jennings Retirement Agreement signed April 23, 2021. Paragraph 12, Section C states that Baird is due damages in the amount of $80,071.43 times the number of remaining Anniversary Dates through the seventh retirement anniversary date from 06/30/2021. As of this letter, there are four (4) remaining anniversary dates resulting in a total amount due to Baird equal to $320,285.72. Under the C701 rep code which The Retirement Agreement is subject to, I currently hold a stake of 9.3% in such client accounts. Therefore, this payment represents the damages owed by me personally.

Thank you, in advance, for your cooperation and compliance with FINRA regulations.

Yours truly,

Andrew D. Boyles

**Enclosures**

July 31, 2024


Shawn Perry
Robert W. Baird & Company
360 8th Avenue
Suite 211
Bowling Green KY 42101

Re: Resignation from Robert W. Baird Effective July 31, 2024

Dear Shawn Perry:

Effective today, Wednesday, July 31, 2024, I hereby resign my position as a Financial Advisor at Robert W. Baird ("Baird") Bowling Green, Kentucky office. My new contact information is: Stifel, 1131 Fairview Avenue, Suite 202, Bowling Green KY 42103, (270) 418-2118. My email address is josh.marson@stifel.com.

I am resigning to join Stifel, Nicolaus & Company a signatory to the "Protocol" and as such I have only retained client contact information for those clients I intend to solicit as permitted by the Broker Protocol. I have attached a copy of those clients' information to this letter.

I am aware of my obligation to repay my outstanding promissory notes. As of June 30, 2024 the outstanding balance was $11,680.55 which I am enclosing a check for. This does not account for the July 2024 forgiveness so this amount should be adequate for the outstanding balance and any accrued interest. I will reconcile this if made aware of any discrepancy.

You have my permission, and my request, to please provide my clients with this information. As you are aware, FINRA Reg. Notice 19-10 (a copy of which is attached) reminds member firms to: 1. inform customers that they may transfer their assets to another firm or have their assets serviced by a different representative, in addition to giving clients the option to retain their assets at their current firm; and 2. provide customers with contact information for their departing representative, including phone number, e-mail, and mailing address.

Additionally, I am leaving payment in the amount of $37,153.14 to make Baird whole for the damages outlined in Paragraph 12, Section C of the Michael Jennings Retirement Agreement signed April 23, 2021. Paragraph 12, Section C states that Baird is due damages in the amount of $80,071.43 times the number of remaining Anniversary Dates through the seventh retirement anniversary date from 06/30/2021. As of this letter, there are four (4) remaining anniversary dates resulting in a total amount due to Baird equal to $320,285.72. Under the C701 rep code which The Retirement Agreement is subject to, I currently hold a stake of 11.6% in such client accounts. Therefore, this payment represents the damages owed by me personally.

Thank you, in advance, for your cooperation and compliance with FINRA regulations.

Yours truly,

Joshua J. Marson

Enclosures

July 31, 2024

Shawn Perry
Robert W. Baird & Company
360 8th Avenue
Suite 211
Bowling Green KY 42101

Re: Resignation

Dear Shawn:

Effective immediately, I am resigning my position as a Client Assistant of The Perry Richey Group of Baird Private Wealth Management, in the Bowling Green, KY office.

I am resigning to join Stifel, Nicolaus & Company a signatory to the "Protocol".

My new contact information is: 270-418-2118. You have my permission, and my request, to please provide my clients with this information. As you are aware, FINRA Reg. Notice 19-10 (a copy of which is attached) reminds member firms to: 1. inform customers that they may transfer their assets to another firm or have their assets serviced by a different representative, in addition to giving clients the option to retain their assets at their current firm; and 2. provide customers with contact information for their departing representative, including phone number, e-mail, and mailing address. Thank you, in advance, for your cooperation and compliance with FINRA regulations.

Sincerely,

*Brooke Schakat*

Brooke Schakat

July 31, 2024

Shawn Perry
Robert W. Baird & Company
360 8th Avenue
Suite 211
Bowling Green KY 42101

Re: Resignation

Dear Shawn:

Effective immediately, I am resigning my position as a Client Assistant of The Perry Richey Group of Baird Private Wealth Management, in the Bowling Green, KY office.

I am resigning to join Stifel, Nicolaus & Company a signatory to the "Protocol".

My new contact information is: 270-418-2118. You have my permission, and my request, to please provide my clients with this information. As you are aware, FINRA Reg. Notice 19-10 (a copy of which is attached) reminds member firms to: 1. inform customers that they may transfer their assets to another firm or have their assets serviced by a different representative, in addition to giving clients the option to retain their assets at their current firm; and 2. provide customers with contact information for their departing representative, including phone number, e-mail, and mailing address. Thank you, in advance, for your cooperation and compliance with FINRA regulations.

Sincerely,

*Savannah York*

Savannah York

























REDACTED



















REDACTED







# EXHIBIT 3

**From:** Richey, Drew <drew.richey@stifel.com>
**Sent:** Wednesday, July 31, 2024 10:21 AM
**Cc:** Richey, Drew (Bowling Green KY) <drew.richey@stifel.com>; Boyles, Andrew (Bowling Green KY) <andrew.boyles@stifel.com>; Marson, Josh (Bowling Green KY) <josh.marson@stifel.com>; Schakat, Brooke (Bowling Green KY) <brooke.schakat@stifel.com>; York, Savannah (Bowling Green KY) <savannah.york@stifel.com>; Richardson, Guy (Dayton) <richardsong@stifel.com>
**Subject:** Exciting Announcement from Your Financial Advisor



## Stifel is pleased to announce
# Gasper Investment Consulting Group

*Please watch our announcement video below to hear from each of us why we chose Stifel and what this means for you!*

We are excited to join a firm that meets our stringent demand for a client-first experience with an exceptional reputation. Our goal in making a change was to partner with a firm that puts investment management, timely market research, leading technology, and client service at the forefront of their business. Stifel excels in every area.

Over the last 130 years, Stifel has grown to become one of the nation's most respected financial services firms.

We truly appreciate the opportunity help guide you and your family toward your financial goals and invite you to join us at Stifel to continue our work together. Rest assured, we will work with you to make this process as seamless and easy as possible.

We have e-mailed Stifel's *Customer Relationship Summary* (Forms CRS), *Relationship Guide*, and the necessary forms to transfer your account(s) to Stifel.  Please fill out required fields and sign where instructed. Click here for eSignature Instructions.

Thank you for your trust and confidence. We look forward to working with you for many years to come.





**Drew Richey, CFP®, CRPS™**
Senior Vice President/Investments
(270) 418-2124

**Joshua J. Marson, CFP®, CIMA®**
First Vice President/Investments
(270) 418-2132

**Andrew D. Boyles, CFP®, QPFC, CPWA®**
Vice President/Investments
(270) 418-2133

**Brooke Schakat**
Client Service Associate
(270) 418-2134

**Savannah York**
Client Service Associate
(270) 418-2135

The following list of questions and answers may clarify some of your concerns.

***Why didn't you tell me you were considering this move?***
The securities industry practice prevented us from informing our clients that we were considering leaving our former firm until we officially resigned. Now that we have officially resigned, we are in the process of informing all of our clients about the move.

***Does this transition cost me anything?***
No. Account transfer fees that are charged to you will be reimbursed to you by Stifel and will appear on your first Stifel statement.

***Where are you located?***

1131 Fairview Avenue, Suite 202 | Bowling Green, Kentucky 42103

***Will the services and products to which we've become accustomed change with this move?***
You can expect the same, if not in most cases, a much more enhanced level of service and products with our move to Stifel.

# (270) 418-2118
# www.gasperinvestment.com

For important considerations regarding transferring your account, **CLICK HERE**.

Stifel, Nicolaus & Company, Incorporated | Member SIPC & NYSE | www.stifel.com

*If you no longer wish to receive these types of communications from Stifel, please reply with a subject line of "unsubscribe." Please note you will still receive electronic communication as it pertains to your account(s).*

**View in Browser**

This message, and any of its attachments, is for the intended recipient(s) only, and it may contain information that is privileged, confidential, and/or proprietary and subject to important terms and conditions available at http://www.stifel.com/disclosures/emaildisclaimers/. If you are not the intended recipient, please delete this message and immediately notify the sender. No confidentiality, privilege, or property rights are waived or lost by any errors in transmission.

# EXHIBIT 4



**BrokerCheck Report**

# NATHAN DREW RICHEY

CRD# 5222063

| Section Title | Page(s) |
| --- | --- |
| Report Summary | 1 |
| Broker Qualifications | 2 - 5 |
| Registration and Employment History | 7 - 8 |



Please be aware that fraudsters may link to BrokerCheck from phishing and similar scam websites, trying to steal your personal information or your money. Make sure you know who you´re dealing with when investing, and contact FINRA with any concerns. For more information read our investor alert on imposters.



# About BrokerCheck®

BrokerCheck offers information on all current, and many former, registered securities brokers, and all current and former registered securities firms. FINRA strongly encourages investors to use BrokerCheck to check the background of securities brokers and brokerage firms before deciding to conduct, or continue to conduct, business with them.

- **What is included in a BrokerCheck report?**

- BrokerCheck reports for individual brokers include information such as employment history, professional qualifications, disciplinary actions, criminal convictions, civil judgments and arbitration awards. BrokerCheck reports for brokerage firms include information on a firm's profile, history, and operations, as well as many of the same disclosure events mentioned above.

- Please note that the information contained in a BrokerCheck report may include pending actions or allegations that may be contested, unresolved or unproven. In the end, these actions or allegations may be resolved in favor of the broker or brokerage firm, or concluded through a negotiated settlement with no admission or finding of wrongdoing.

- **Where did this information come from?**

- The information contained in BrokerCheck comes from FINRA's Central Registration Depository, or CRD® and is a combination of:
    - ○ information FINRA and/or the Securities and Exchange Commission (SEC) require brokers and brokerage firms to submit as part of the registration and licensing process, and
    - ○ information that regulators report regarding disciplinary actions or allegations against firms or brokers.

- **How current is this information?**

- Generally, active brokerage firms and brokers are required to update their professional and disciplinary information in CRD within 30 days. Under most circumstances, information reported by brokerage firms, brokers and regulators is available in BrokerCheck the next business day.

- **What if I want to check the background of an investment adviser firm or investment adviser representative?**

- To check the background of an investment adviser firm or representative, you can search for the firm or individual in BrokerCheck. If your search is successful, click on the link provided to view the available licensing and registration information in the SEC's Investment Adviser Public Disclosure (IAPD) website at https://www.adviserinfo.sec.gov. In the alternative, you may search the IAPD website directly or contact your state securities regulator at http://www.finra.org/Investors/ToolsCalculators/BrokerCheck/P455414.

- **Are there other resources I can use to check the background of investment professionals?**

- FINRA recommends that you learn as much as possible about an investment professional before deciding to work with them. Your state securities regulator can help you research brokers and investment adviser representatives doing business in your state.

- **Thank you for using FINRA BrokerCheck.**



Using this site/information means that you accept the FINRA BrokerCheck Terms and Conditions. A complete list of Terms and Conditions can be found at brokercheck.finra.org

For additional information about the contents of this report, please refer to the User Guidance or www.finra.org/brokercheck. It provides a glossary of terms and a list of frequently asked questions, as well as additional resources. For more information about FINRA, visit www.finra.org.

www.finra.org/brokercheck

User Guidance



# NATHAN D. RICHEY

CRD# 5222063

**Currently employed by and registered with the following Firm(s):**

**IA** **STIFEL, NICOLAUS & COMPANY, INCORPORATED**
1131 FAIRVIEW AVE
BOWLING GREEN, KY 42103
CRD# 793
Registered with this firm since: 07/31/2024

**B** **STIFEL, NICOLAUS & COMPANY, INCORPORATED**
1131 FAIRVIEW AVE
BOWLING GREEN, KY 42103
CRD# 793
Registered with this firm since: 07/31/2024

# Report Summary for this Broker

This report summary provides an overview of the broker's professional background and conduct. Additional information can be found in the detailed report.

## Broker Qualifications

**This broker is registered with:**

- 6 Self-Regulatory Organizations
- 27 U.S. states and territories

**This broker has passed:**

- 0 Principal/Supervisory Exams
- 2 General Industry/Product Exams
- 1 State Securities Law Exam

## Registration History

**This broker was previously registered with the following securities firm(s):**

**B** **ROBERT W. BAIRD & CO. INCORPORATED**
CRD# 8158
Bowling Green – Park Plaza, KY
10/2019 - 08/2024

**IA** **ROBERT W. BAIRD & CO. INCORPORATED**
CRD# 8158
MILWAUKEE, WI
10/2019 - 08/2024

**B** **J.J.B. HILLIARD, W.L. LYONS, LLC**
CRD# 453
BOWLING GREEN, KY
09/2013 - 10/2019

## Disclosure Events

All individuals registered to sell securities or provide investment advice are required to disclose customer complaints and arbitrations, regulatory actions, employment terminations, bankruptcy filings, and criminal or civil judicial proceedings.

Are there events disclosed about this broker?    **No**

©2024 FINRA. All rights reserved. Report about NATHAN D. RICHEY.

www.finra.org/brokercheck

User Guidance

# Broker Qualifications

## Registrations

This section provides the self-regulatory organizations (SROs) and U.S. states/territories the broker is currently registered and licensed with, the category of each license, and the date on which it became effective. This section also provides, for every brokerage firm with which the broker is currently employed, the address of each branch where the broker works.

**This individual is currently registered with 6 SROs and is licensed in 27 U.S. states and territories through his or her employer.**

## Employment 1 of 1

Firm Name: **STIFEL, NICOLAUS & COMPANY, INCORPORATED**
Main Office Address: **501 NORTH BROADWAY**
**ST. LOUIS, MO  63102**
Firm CRD#: **793**

| | SRO | Category | Status | Date |
|---|---|---|---|---|
| B | Cboe BZX Exchange, Inc. | General Securities Representative | Approved | 07/31/2024 |
| B | FINRA | General Securities Representative | Approved | 07/31/2024 |
| B | NYSE American LLC | General Securities Representative | Approved | 07/31/2024 |
| B | Nasdaq PHLX LLC | General Securities Representative | Approved | 07/31/2024 |
| B | Nasdaq Stock Market | General Securities Representative | Approved | 07/31/2024 |
| B | New York Stock Exchange | General Securities Representative | Approved | 07/31/2024 |

| | U.S. State/ Territory | Category | Status | Date |
|---|---|---|---|---|
| B | Alaska | Agent | Approved | 07/31/2024 |
| B | Arkansas | Agent | Approved | 07/31/2024 |
| B | California | Agent | Approved | 07/31/2024 |
| B | Colorado | Agent | Approved | 07/31/2024 |
| B | Florida | Agent | Approved | 07/31/2024 |
| B | Georgia | Agent | Approved | 07/31/2024 |
| B | Illinois | Agent | Approved | 07/31/2024 |

©2024 FINRA. All rights reserved. Report about NATHAN D. RICHEY.

2

www.finra.org/brokercheck

User Guidance

# FINILA

## Broker Qualifications

### Employment 1 of 1, continued

| | U.S. State/ Territory | Category | Status | Date |
|---|---|---|---|---|
| B | Indiana | Agent | Approved | 07/31/2024 |
| B | Kentucky | Agent | Approved | 07/31/2024 |
| IA | Kentucky | Investment Adviser Representative | Approved | 07/31/2024 |
| B | Maryland | Agent | Approved | 07/31/2024 |
| B | Michigan | Agent | Approved | 07/31/2024 |
| B | Mississippi | Agent | Approved | 07/31/2024 |
| B | Missouri | Agent | Approved | 07/31/2024 |
| B | Nevada | Agent | Approved | 07/31/2024 |
| B | New Hampshire | Agent | Approved | 07/31/2024 |
| B | North Carolina | Agent | Approved | 07/31/2024 |
| B | Ohio | Agent | Approved | 07/31/2024 |
| B | Oregon | Agent | Approved | 07/31/2024 |
| B | South Carolina | Agent | Approved | 07/31/2024 |
| B | Tennessee | Agent | Approved | 07/31/2024 |
| B | Texas | Agent | Approved | 07/31/2024 |
| IA | Texas | Investment Adviser Representative | Approved | 07/31/2024 |
| B | Utah | Agent | Approved | 07/31/2024 |
| B | Virginia | Agent | Approved | 07/31/2024 |
| B | Washington | Agent | Approved | 07/31/2024 |
| B | West Virginia | Agent | Approved | 07/31/2024 |
| B | Wisconsin | Agent | Approved | 07/31/2024 |

©2024 FINRA. All rights reserved. Report about NATHAN D. RICHEY.

3

www.finra.org/brokercheck

User Guidance

**FINRA**

## Broker Qualifications

### Employment 1 of 1, continued

| U.S. State/ Territory | Category | Status | Date |
|---|---|---|---|
| B Wyoming | Agent | Approved | 07/31/2024 |

## Branch Office Locations

**STIFEL, NICOLAUS & COMPANY, INCORPORATED**
1131 FAIRVIEW AVE
BOWLING GREEN, KY 42103

©2024 FINRA. All rights reserved. Report about NATHAN D. RICHEY.

4

www.finra.org/brokercheck

User Guidance

# FINLA

# Broker Qualifications

## Industry Exams this Broker has Passed

This section includes all securities industry exams that the broker has passed. Under limited circumstances, a broker may attain a registration after receiving an exam waiver based on exams the broker has passed and/or qualifying work experience. Any exam waivers that the broker has received are not included below.

**This individual has passed 0 principal/supervisory exams, 2 general industry/product exams, and 1 state securities law exam.**

### Principal/Supervisory Exams

| Exam | Category | Date |
|------|----------|------|
| No information reported. | | |

### General Industry/Product Exams

| Exam | Category | Date |
|------|----------|------|
| B Securities Industry Essentials Examination | SIE | 10/01/2018 |
| B General Securities Representative Examination | Series 7 | 05/21/2008 |

### State Securities Law Exams

| Exam | Category | Date |
|------|----------|------|
| B IA Uniform Combined State Law Examination | Series 66 | 01/16/2009 |

Additional information about the above exams or other exams FINRA administers to brokers and other securities professionals can be found at www.finra.org/brokerqualifications/registeredrep/.

©2024 FINRA. All rights reserved. Report about NATHAN D. RICHEY.

www.finra.org/brokercheck

User Guidance

# Broker Qualifications

## Professional Designations

This section details that the representative has reported **1** professional designation(s).

| Certified Financial Planner |
| --- |

This representative holds or did hold **1** professional designation(s) that may have been used to qualify as an Investment Advisor representative. Please check with the appropriate designation authority for verification that the designation is still in effect. The contact information for these professional designation authorities can be found on the website for the North American Securities Administrators Association at http://www.nasaa.org

©2024 FINRA. All rights reserved. Report about NATHAN D. RICHEY.



www.finra.org/brokercheck

User Guidance

# Registration and Employment History

## Registration History

The broker previously was registered with the following firms:

| | Registration Dates | Firm Name | CRD# | Branch Location |
|---|---|---|---|---|
| B | 10/2019 - 08/2024 | ROBERT W. BAIRD & CO. INCORPORATED | 8158 | Bowling Green - Park Plaza, KY |
| IA | 10/2019 - 08/2024 | ROBERT W. BAIRD & CO. INCORPORATED | 8158 | Bowling Green - Park Plaza, KY |
| B | 09/2013 - 10/2019 | J.J.B. HILLIARD, W.L. LYONS, LLC | 453 | BOWLING GREEN, KY |
| IA | 09/2013 - 10/2019 | J.J.B. HILLIARD, W.L. LYONS, LLC | 453 | BOWLING GREEN, KY |
| IA | 03/2009 - 09/2013 | WELLS FARGO ADVISORS, LLC | 19616 | BOWLING GREEN, KY |
| B | 05/2008 - 09/2013 | WELLS FARGO ADVISORS, LLC | 19616 | BOWLING GREEN, KY |

## Employment History

This section provides up to 10 years of an individual broker's employment history as reported by the individual broker on the most recently filed Form U4.

**Please note that the broker is required to provide this information only while registered with FINRA or a national securities exchange and the information is not updated via Form U4 after the broker ceases to be registered. Therefore, an employment end date of "Present" may not reflect the broker's current employment status.**

| Employment | Employer Name | Position | Investment Related | Employer Location |
|---|---|---|---|---|
| 07/2024 - Present | STIFEL, NICOLAUS & COMPANY, INCORPORATED | First Vice President/Investments | Y | Bowling Green, KY, United States |
| 10/2019 - 07/2024 | ROBERT W. BAIRD & CO. INCORPORATED | Mass Transfer | Y | BOWLING GREEN, KY, United States |
| 09/2013 - 07/2024 | JJB HILLIARD WL LYONS LLC | FINANCIAL CONSULTANT | Y | LOUISVILLE, KY, United States |

## Other Business Activities

This section includes information, if any, as provided by the broker regarding other business activities the broker is currently engaged in either as a proprietor, partner, officer, director, employee, trustee, agent or otherwise. This section does not include non-investment related activity that is exclusively charitable, civic, religious or fraternal and is recognized as tax exempt.

1) ADVOCARE, HEALTH SUPPLEMENT COMPANY, DISTRIBUTORSHIP FOR HEALTH SUPPLEMENTS, NOT INVESTMENT RELATED, 2801 SUMMIT AVENUE, PLANO TX 75074, START DATE 01/01/2016, 5 HRS PER MONTH, 0 HRS/MO TRADING

2) Name/Address: Author; Finding Your Financial Advisor

©2024 FINRA. All rights reserved. Report about NATHAN D. RICHEY.

www.finra.org/brokercheck

User Guidance

# Registration and Employment History

## Other Business Activities, continued

Start Date: 1/1/21 Hours Spent: 10+ hours/month Hours Spent During Trading: 10+ hours/month
Role/Responsibility: Author; Contributor
Non Investment Related

3. Victory Hill Church; 9593 Veterans Memorial Hwy Scottsville KY 42164; Religious Organization; Leadership Board; Review and Approve Business Dealing and Budget of the Church; 01/01/2019; 5.00hrs/month; Not during securities trading hours; Not Investment-Related

©2024 FINRA. All rights reserved. Report about NATHAN D. RICHEY.



User Guidance

**End of Report**

**This page is intentionally left blank.**

www.finra.org/brokercheck

©2024 FINRA. All rights reserved. Report about NATHAN D. RICHEY.

# EXHIBIT 5



**BrokerCheck Report**

## JOSHUA J. MARSON

CRD# 5746989

| **Section Title** | **Page(s)** |
| --- | --- |
| Report Summary | 1 |
| Broker Qualifications | 2 - 5 |
| Registration and Employment History | 7 - 8 |



Please be aware that fraudsters may link to BrokerCheck from phishing and similar scam websites, trying to steal your personal information or your money. Make sure you know who you´re dealing with when investing, and contact FINRA with any concerns. For more information read our investor alert on imposters.



## About BrokerCheck®

BrokerCheck offers information on all current, and many former, registered securities brokers, and all current and former registered securities firms. FINRA strongly encourages investors to use BrokerCheck to check the background of securities brokers and brokerage firms before deciding to conduct, or continue to conduct, business with them.



Using this site/information means that you accept the FINRA BrokerCheck Terms and Conditions. A complete list of Terms and Conditions can be found at

brokercheck.finra.org

- **What is included in a BrokerCheck report?**

  BrokerCheck reports for individual brokers include information such as employment history, professional qualifications, disciplinary actions, criminal convictions, civil judgments and arbitration awards. BrokerCheck reports for brokerage firms include information on a firm's profile, history, and operations, as well as many of the same disclosure events mentioned above.

  Please note that the information contained in a BrokerCheck report may include pending actions or allegations that may be contested, unresolved or unproven. In the end, these actions or allegations may be resolved in favor of the broker or brokerage firm, or concluded through a negotiated settlement with no admission or finding of wrongdoing.

- **Where did this information come from?**

  The information contained in BrokerCheck comes from FINRA's Central Registration Depository, or CRD® and is a combination of:
    - o information FINRA and/or the Securities and Exchange Commission (SEC) require brokers and brokerage firms to submit as part of the registration and licensing process, and
    - o information that regulators report regarding disciplinary actions or allegations against firms or brokers.

- **How current is this information?**

  Generally, active brokerage firms and brokers are required to update their professional and disciplinary information in CRD within 30 days. Under most circumstances, information reported by brokerage firms, brokers and regulators is available in BrokerCheck the next business day.

- **What if I want to check the background of an investment adviser firm or investment adviser representative?**

  To check the background of an investment adviser firm or representative, you can search for the firm or individual in BrokerCheck. If your search is successful, click on the link provided to view the available licensing and registration information in the SEC's Investment Adviser Public Disclosure (IAPD) website at https://www.adviserinfo.sec.gov. In the alternative, you may search the IAPD website directly or contact your state securities regulator at http://www.finra.org/Investors/ToolsCalculators/BrokerCheck/P455414.

- **Are there other resources I can use to check the background of investment professionals?**

  FINRA recommends that you learn as much as possible about an investment professional before deciding to work with them. Your state securities regulator can help you research brokers and investment adviser representatives doing business in your state.



For additional information about the contents of this report, please refer to the User Guidance or www.finra.org/brokercheck. It provides a glossary of terms and a list of frequently asked questions, as well as additional resources. For more information about FINRA, visit www.finra.org.

**Thank you for using FINRA BrokerCheck.**

www.finra.org/brokercheck

User Guidance

FINRA

# JOSHUA J. MARSON

CRD# 5746989

**Currently employed by and registered with the following Firm(s):**

**IA** **STIFEL, NICOLAUS & COMPANY, INCORPORATED**
1131 FAIRVIEW AVE
BOWLING GREEN, KY 42103
CRD# 793
Registered with this firm since: 07/31/2024

**B** **STIFEL, NICOLAUS & COMPANY, INCORPORATED**
1131 FAIRVIEW AVE
BOWLING GREEN, KY 42103
CRD# 793
Registered with this firm since: 07/31/2024

# Report Summary for this Broker

This report summary provides an overview of the broker's professional background and conduct. Additional information can be found in the detailed report.

## Broker Qualifications

**This broker is registered with:**

- 6 Self-Regulatory Organizations
- 27 U.S. states and territories

**This broker has passed:**

- 2 Principal/Supervisory Exams
- 2 General Industry/Product Exams
- 1 State Securities Law Exam

## Registration History

**This broker was previously registered with the following securities firm(s):**

**B** **ROBERT W. BAIRD & CO. INCORPORATED**
CRD# 8158
Bowling Green - Park Plaza, KY
10/2019 - 08/2024

**IA** **ROBERT W. BAIRD & CO. INCORPORATED**
CRD# 8158
MILWAUKEE, WI
10/2019 - 08/2024

**B** **J.J.B. HILLIARD, W.L. LYONS, LLC**
CRD# 453
BOWLING GREEN, KY
09/2013 - 10/2019

## Disclosure Events

All individuals registered to sell securities or provide investment advice are required to disclose customer complaints and arbitrations, regulatory actions, employment terminations, bankruptcy filings, and criminal or civil judicial proceedings.

Are there events disclosed about this broker?  **No**

©2024 FINRA. All rights reserved. Report about JOSHUA J. MARSON.

1

www.finra.org/brokercheck

User Guidance

**FINRA**

# Broker Qualifications

## Registrations

This section provides the self-regulatory organizations (SROs) and U.S. states/territories the broker is currently registered and licensed with, the category of each license, and the date on which it became effective. This section also provides, for every brokerage firm with which the broker is currently employed, the address of each branch where the broker works.

**This individual is currently registered with 6 SROs and is licensed in 27 U.S. states and territories through his or her employer.**

## Employment 1 of 1

| Firm Name: | STIFEL, NICOLAUS & COMPANY, INCORPORATED |
| Main Office Address: | 501 NORTH BROADWAY |
| | ST. LOUIS, MO 63102 |
| Firm CRD#: | 793 |

| SRO | Category | Status | Date |
|-----|----------|--------|------|
| Cboe BZX Exchange, Inc. | General Securities Representative | Approved | 07/31/2024 |
| FINRA | General Securities Representative | Approved | 07/31/2024 |
| FINRA | General Securities Sales Supervisor | Approved | 07/31/2024 |
| NYSE American LLC | General Securities Representative | Approved | 07/31/2024 |
| NYSE American LLC | General Securities Sales Supervisor | Approved | 07/31/2024 |
| Nasdaq PHLX LLC | General Securities Representative | Approved | 07/31/2024 |
| Nasdaq PHLX LLC | General Securities Sales Supervisor | Approved | 07/31/2024 |
| Nasdaq Stock Market | General Securities Representative | Approved | 07/31/2024 |
| Nasdaq Stock Market | General Securities Sales Supervisor | Approved | 07/31/2024 |
| New York Stock Exchange | General Securities Representative | Approved | 07/31/2024 |
| New York Stock Exchange | General Securities Sales Supervisor | Approved | 07/31/2024 |

| U.S. State/ Territory | Category | Status | Date |
|-----------------------|----------|--------|------|
| Alaska | Agent | Approved | 07/31/2024 |
| Arkansas | Agent | Approved | 07/31/2024 |

©2024 FINRA. All rights reserved. Report about JOSHUA J. MARSON.

www.finra.org/brokercheck

User Guidance

**Broker Qualifications**

## Employment 1 of 1, continued

| U.S. State/ Territory | Category | Status | Date |
|---|---|---|---|
| California | Agent | Approved | 07/31/2024 |
| Colorado | Agent | Approved | 07/31/2024 |
| Florida | Agent | Approved | 07/31/2024 |
| Georgia | Agent | Approved | 07/31/2024 |
| Illinois | Agent | Approved | 07/31/2024 |
| Indiana | Agent | Approved | 07/31/2024 |
| Kentucky | Agent | Approved | 07/31/2024 |
| Kentucky | Investment Adviser Representative | Approved | 07/31/2024 |
| Maryland | Agent | Approved | 07/31/2024 |
| Michigan | Agent | Approved | 07/31/2024 |
| Mississippi | Agent | Approved | 07/31/2024 |
| Missouri | Agent | Approved | 07/31/2024 |
| Nevada | Agent | Approved | 07/31/2024 |
| New Hampshire | Agent | Approved | 07/31/2024 |
| North Carolina | Agent | Approved | 07/31/2024 |
| Ohio | Agent | Approved | 07/31/2024 |
| Oregon | Agent | Approved | 07/31/2024 |
| South Carolina | Agent | Approved | 07/31/2024 |
| Tennessee | Agent | Approved | 07/31/2024 |
| Texas | Agent | Approved | 07/31/2024 |
| Texas | Investment Adviser Representative | Approved | 07/31/2024 |

©2024 FINRA. All rights reserved. Report about JOSHUA J. MARSON.

3

User Guidance

www.finra.org/brokercheck

# Broker Qualifications

## Employment 1 of 1, continued

| U.S. State/ Territory | Category | Status | Date |
|---|---|---|---|
| Utah | Agent | Approved | 07/31/2024 |
| Virginia | Agent | Approved | 07/31/2024 |
| Washington | Agent | Approved | 07/31/2024 |
| West Virginia | Agent | Approved | 07/31/2024 |
| Wisconsin | Agent | Approved | 07/31/2024 |
| Wyoming | Agent | Approved | 07/31/2024 |

## Branch Office Locations

**STIFEL, NICOLAUS & COMPANY, INCORPORATED**
1131 FAIRVIEW AVE
BOWLING GREEN, KY  42103

©2024 FINRA. All rights reserved. Report about JOSHUA J. MARSON.

www.finra.org/brokercheck
User Guidance

FINRA

# Broker Qualifications

## Industry Exams this Broker has Passed

This section includes all securities industry exams that the broker has passed. Under limited circumstances, a broker may attain a registration after receiving an exam waiver based on exams the broker has passed and/or qualifying work experience. Any exam waivers that the broker has received are not included below.

**This individual has passed 2 principal/supervisory exams, 2 general industry/product exams, and 1 state securities law exam.**

### Principal/Supervisory Exams

| Exam | | Category | Date |
|---|---|---|---|
| B | General Securities Sales Supervisor - General Module Examination | Series 10 | 06/02/2014 |
| B | General Securities Sales Supervisor - Options Module Examination | Series 9 | 02/11/2014 |

### General Industry/Product Exams

| Exam | | Category | Date |
|---|---|---|---|
| B | Securities Industry Essentials Examination | SIE | 10/01/2018 |
| B | General Securities Representative Examination | Series 7 | 06/19/2012 |

### State Securities Law Exams

| Exam | | Category | Date |
|---|---|---|---|
| B IA | Uniform Combined State Law Examination | Series 66 | 12/28/2012 |

Additional information about the above exams or other exams FINRA administers to brokers and other securities professionals can be found at www.finra.org/brokerqualifications/registeredrepl.

©2024 FINRA. All rights reserved. Report about JOSHUA J. MARSON.



www.finra.org/brokercheck

User Guidance

# Broker Qualifications

## Professional Designations

This section details that the representative has reported **1** professional designation(s).

Certified Financial Planner

This representative holds or did hold **1** professional designation(s) that may have been used to qualify as an Investment Advisor representative. Please check with the appropriate designation authority for verification that the designation is still in effect. The contact information for these professional designation authorities can be found on the website for the North American Securities Administrators Association at http://www.nasaa.org

©2024 FINRA. All rights reserved. Report about JOSHUA J. MARSON.

www.finra.org/brokercheck

User Guidance

# Registration and Employment History

## Registration History

The broker previously was registered with the following firms:

| | Registration Dates | Firm Name | CRD# | Branch Location |
|---|---|---|---|---|
| B | 10/2019 - 08/2024 | ROBERT W. BAIRD & CO. INCORPORATED | 8158 | Bowling Green - Park Plaza, KY |
| IA | 10/2019 - 08/2024 | ROBERT W. BAIRD & CO. INCORPORATED | 8158 | Bowling Green - Park Plaza, KY |
| B | 09/2013 - 10/2019 | J.J.B. HILLIARD, W.L. LYONS, LLC | 453 | BOWLING GREEN, KY |
| IA | 09/2013 - 10/2019 | J.J.B. HILLIARD, W.L. LYONS, LLC | 453 | BOWLING GREEN, KY |
| IA | 01/2013 - 09/2013 | WELLS FARGO ADVISORS, LLC | 19616 | BOWLING GREEN, KY |
| B | 06/2012 - 09/2013 | WELLS FARGO ADVISORS, LLC | 19616 | BOWLING GREEN, KY |

## Employment History

This section provides up to 10 years of an individual broker's employment history as reported by the individual broker on the most recently filed Form U4.

**Please note that the broker is required to provide this information only while registered with FINRA or a national securities exchange and the information is not updated via Form U4 after the broker ceases to be registered. Therefore, an employment end date of "Present" may not reflect the broker's current employment status.**

| Employment | Employer Name | Position | Investment Related | Employer Location |
|---|---|---|---|---|
| 07/2024 - Present | STIFEL, NICOLAUS & COMPANY, INCORPORATED | Vice President/Investments | Y | Bowling Green, KY, United States |
| 10/2019 - 07/2024 | ROBERT W. BAIRD & CO. INCORPORATED | Mass Transfer | Y | BOWLING GREEN, KY, United States |
| 10/2018 - 07/2024 | JJB HILLIARD WL LYONS LLC | WEALTH ADVISOR | Y | BOWLING GREEN, KY, United States |
| 09/2013 - 10/2018 | JJ B HILLIARD WL LYONS LLC | BRANCH MANAGER | Y | LOUISVILLE, KY, United States |

## Other Business Activities

This section includes information, if any, as provided by the broker regarding other business activities the broker is currently engaged in either as a proprietor, partner, officer, director, employee, trustee, agent or otherwise. This section does not include non-investment related activity that is exclusively charitable, civic, religious or fraternal and is recognized as tax exempt.

No information reported.

©2024 FINRA. All rights reserved. Report about JOSHUA J. MARSON.

7

User Guidance

www.finra.org/brokercheck

**Registration and Employment History**

©2024 FINRA. All rights reserved. Report about JOSHUA J. MARSON.

8



User Guidance

**End of Report**

**This page is intentionally left blank.**

www.finra.org/brokercheck

©2024 FINRA. All rights reserved. Report about JOSHUA J. MARSON.

# EXHIBIT 6



**BrokerCheck Report**

# ANDREW DOUGLAS BOYLES

CRD# 6492842

| Section Title | Page(s) |
|---|---|
| Report Summary | 1 |
| Broker Qualifications | 2 - 5 |
| Registration and Employment History | 7 |



Please be aware that fraudsters may link to BrokerCheck from phishing and similar scam websites, trying to steal your personal information or your money. Make sure you know who you're dealing with when investing, and contact FINRA with any concerns. For more information read our investor alert on imposters.



# About BrokerCheck®

BrokerCheck offers information on all current, and many former, registered securities brokers, and all current and former registered securities firms. FINRA strongly encourages investors to use BrokerCheck to check the background of securities brokers and brokerage firms before deciding to conduct, or continue to conduct, business with them.



- **What is included in a BrokerCheck report?**
  - BrokerCheck reports for individual brokers include information such as employment history, professional qualifications, disciplinary actions, criminal convictions, civil judgments and arbitration awards. BrokerCheck reports for brokerage firms include information on a firm's profile, history, and operations, as well as many of the same disclosure events mentioned above.
  - Please note that the information contained in a BrokerCheck report may include pending actions or allegations that may be contested, unresolved or unproven. In the end, these actions or allegations may be resolved in favor of the broker or brokerage firm, or concluded through a negotiated settlement with no admission or finding of wrongdoing.

- **Where did this information come from?**
  - The information contained in BrokerCheck comes from FINRA's Central Registration Depository, or CRD® and is a combination of:
    - o information FINRA and/or the Securities and Exchange Commission (SEC) require brokers and brokerage firms to submit as part of the registration and licensing process, and
    - o information that regulators report regarding disciplinary actions or allegations against firms or brokers.

- **How current is this information?**
  - Generally, active brokerage firms and brokers are required to update their professional and disciplinary information in CRD within 30 days. Under most circumstances, information reported by brokerage firms, brokers and regulators is available in BrokerCheck the next business day.

- **What if I want to check the background of an investment adviser firm or investment adviser representative?**
  - To check the background of an investment adviser firm or representative, you can search for the firm or individual in BrokerCheck. If your search is successful, click on the link provided to view the available licensing and registration information in the SEC's Investment Adviser Public Disclosure (IAPD) website at https://www.adviserinfo.sec.gov. In the alternative, you may search the IAPD website directly or contact your state securities regulator at http://www.finra.org/Investors/ToolsCalculators/BrokerCheck/P455414.

- **Are there other resources I can use to check the background of investment professionals?**
  - FINRA recommends that you learn as much as possible about an investment professional before deciding to work with them. Your state securities regulator can help you research brokers and investment adviser representatives doing business in your state.

**Thank you for using FINRA BrokerCheck.**

Using this site/information means that you accept the FINRA BrokerCheck Terms and Conditions. A complete list of Terms and Conditions can be found at
brokercheck.finra.org

For additional information about the contents of this report, please refer to the User Guidance or www.finra.org/brokercheck. It provides a glossary of terms and a list of frequently asked questions, as well as additional resources. For more information about FINRA, visit www.finra.org.



www.finra.org/brokercheck

User Guidance

# ANDREW D. BOYLES

CRD# 6492842

## Report Summary for this Broker

This report summary provides an overview of the broker's professional background and conduct. Additional information can be found in the detailed report.

**Currently employed by and registered with the following Firm(s):**



**IA** **STIFEL, NICOLAUS & COMPANY, INCORPORATED**
1131 FAIRVIEW AVE
BOWLING GREEN, KY 42103
CRD# 793
Registered with this firm since: 07/31/2024

**B** **STIFEL, NICOLAUS & COMPANY, INCORPORATED**
1131 FAIRVIEW AVE
BOWLING GREEN, KY 42103
CRD# 793
Registered with this firm since: 07/31/2024

## Broker Qualifications

**This broker is registered with:**

- 6 Self-Regulatory Organizations
- 27 U.S. states and territories

**This broker has passed:**

- 0 Principal/Supervisory Exams
- 2 General Industry/Product Exams
- 1 State Securities Law Exam

## Registration History

**This broker was previously registered with the following securities firm(s):**

**B** **ROBERT W. BAIRD & CO. INCORPORATED**
CRD# 8158
Bowling Green - Park Plaza, KY
10/2019 - 08/2024

**IA** **ROBERT W. BAIRD & CO. INCORPORATED**
CRD# 8158
MILWAUKEE, WI
10/2019 - 08/2024

**IA** **J.J.B. HILLIARD, W.L. LYONS, LLC**
CRD# 453
LOUISVILLE, KY
11/2016 - 10/2019

## Disclosure Events

All individuals registered to sell securities or provide investment advice are required to disclose customer complaints and arbitrations, regulatory actions, employment terminations, bankruptcy filings, and criminal or civil judicial proceedings.

Are there events disclosed about this broker?    **No**

©2024 FINRA. All rights reserved. Report about ANDREW D. BOYLES.

www.finra.org/brokercheck
User Guidance

# FINRA

# Broker Qualifications

## Registrations

This section provides the self-regulatory organizations (SROs) and U.S. states/territories the broker is currently registered and licensed with, the category of each license, and the date on which it became effective. This section also provides, for every brokerage firm with which the broker is currently employed, the address of each branch where the broker works.

**This individual is currently registered with 6 SROs and is licensed in 27 U.S. states and territories through his or her employer.**

## Employment 1 of 1

Firm Name:              **STIFEL, NICOLAUS & COMPANY, INCORPORATED**
Main Office Address:    **501 NORTH BROADWAY**
                        **ST. LOUIS, MO 63102**
Firm CRD#:              **793**

| | SRO | Category | Status | Date |
|---|---|---|---|---|
| B | Cboe BZX Exchange, Inc. | General Securities Representative | Approved | 07/31/2024 |
| B | FINRA | General Securities Representative | Approved | 07/31/2024 |
| B | NYSE American LLC | General Securities Representative | Approved | 07/31/2024 |
| B | Nasdaq PHLX LLC | General Securities Representative | Approved | 07/31/2024 |
| B | Nasdaq Stock Market | General Securities Representative | Approved | 07/31/2024 |
| B | New York Stock Exchange | General Securities Representative | Approved | 07/31/2024 |

| | U.S. State/ Territory | Category | Status | Date |
|---|---|---|---|---|
| B | Alaska | Agent | Approved | 07/31/2024 |
| B | Arkansas | Agent | Approved | 07/31/2024 |
| B | California | Agent | Approved | 07/31/2024 |
| B | Colorado | Agent | Approved | 07/31/2024 |
| B | Florida | Agent | Approved | 07/31/2024 |
| B | Georgia | Agent | Approved | 07/31/2024 |
| B | Illinois | Agent | Approved | 07/31/2024 |

©2024 FINRA. All rights reserved. Report about ANDREW D. BOYLES.

2

www.finra.org/brokercheck

User Guidance

FINRA

**Broker Qualifications**

## Employment 1 of 1, continued

| | U.S. State/ Territory | Category | Status | Date |
|---|---|---|---|---|
| B | Indiana | Agent | Approved | 07/31/2024 |
| B | Kentucky | Agent | Approved | 07/31/2024 |
| IA | Kentucky | Investment Adviser Representative | Approved | 07/31/2024 |
| B | Maryland | Agent | Approved | 07/31/2024 |
| B | Michigan | Agent | Approved | 07/31/2024 |
| B | Mississippi | Agent | Approved | 07/31/2024 |
| B | Missouri | Agent | Approved | 07/31/2024 |
| B | Nevada | Agent | Approved | 07/31/2024 |
| B | New Hampshire | Agent | Approved | 07/31/2024 |
| B | North Carolina | Agent | Approved | 07/31/2024 |
| B | Ohio | Agent | Approved | 07/31/2024 |
| B | Oregon | Agent | Approved | 07/31/2024 |
| B | South Carolina | Agent | Approved | 07/31/2024 |
| B | Tennessee | Agent | Approved | 07/31/2024 |
| B | Texas | Agent | Approved | 07/31/2024 |
| IA | Texas | Investment Adviser Representative | Approved | 07/31/2024 |
| B | Utah | Agent | Approved | 07/31/2024 |
| B | Virginia | Agent | Approved | 07/31/2024 |
| B | Washington | Agent | Approved | 07/31/2024 |
| B | West Virginia | Agent | Approved | 07/31/2024 |
| B | Wisconsin | Agent | Approved | 07/31/2024 |

©2024 FINRA. All rights reserved. Report about ANDREW D. BOYLES.

www.finra.org/brokercheck

User Guidance



# Broker Qualifications

## Employment 1 of 1, continued

| | U.S. State/ Territory | Category | Status | Date |
|---|---|---|---|---|
| B | Wyoming | Agent | Approved | 07/31/2024 |

## Branch Office Locations

**STIFEL, NICOLAUS & COMPANY, INCORPORATED**
1131 FAIRVIEW AVE
BOWLING GREEN, KY  42103

©2024 FINRA. All rights reserved. Report about ANDREW D. BOYLES.

www.finra.org/brokercheck

User Guidance



# Broker Qualifications

## Industry Exams this Broker has Passed

This section includes all securities industry exams that the broker has passed. Under limited circumstances, a broker may attain a registration after receiving an exam waiver based on exams the broker has passed and/or qualifying work experience. Any exam waivers that the broker has received are not included below.

**This individual has passed 0 principal/supervisory exams, 2 general industry/product exams, and 1 state securities law exam.**

### Principal/Supervisory Exams

| Exam | Category | Date |
|------|----------|------|
| No information reported. | | |

### General Industry/Product Exams

| Exam | Category | Date |
|------|----------|------|
| Securities Industry Essentials Examination | SIE | 10/01/2018 |
| General Securities Representative Examination | Series 7 | 10/07/2016 |

### State Securities Law Exams

| Exam | Category | Date |
|------|----------|------|
| Uniform Combined State Law Examination | Series 66 | 11/03/2016 |

Additional information about the above exams or other exams FINRA administers to brokers and other securities professionals can be found at www.finra.org/brokerqualifications/registeredrep/.

©2024 FINRA. All rights reserved. Report about ANDREW D. BOYLES.

www.finra.org/brokercheck

User Guidance

FINꞋ∩

# Broker Qualifications

## Professional Designations

This section details that the representative has reported **1** professional designation(s).

| Certified Financial Planner |
|---|

This representative holds or did hold **1** professional designation(s) that may have been used to qualify as an Investment Advisor representative. Please check with the appropriate designation authority for verification that the designation is still in effect. The contact information for these professional designation authorities can be found on the website for the North American Securities Administrators Association at http://www.nasaa.org

©2024 FINRA. All rights reserved. Report about ANDREW D. BOYLES.

6

www.finra.org/brokercheck

User Guidance

# FINRA

# Registration and Employment History

## Registration History

The broker previously was registered with the following firms:

| | Registration Dates | Firm Name | CRD# | Branch Location |
|---|---|---|---|---|
| B | 10/2019 - 08/2024 | ROBERT W. BAIRD & CO. INCORPORATED | 8158 | Bowling Green - Park Plaza, KY |
| IA | 10/2019 - 08/2024 | ROBERT W. BAIRD & CO. INCORPORATED | 8158 | Bowling Green - Park Plaza, KY |
| IA | 11/2016 - 10/2019 | J.J.B. HILLIARD, W.L. LYONS, LLC | 453 | BOWLING GREEN, KY |
| B | 10/2016 - 10/2019 | J.J.B. HILLIARD, W.L. LYONS, LLC | 453 | BOWLING GREEN, KY |

## Employment History

This section provides up to 10 years of an individual broker's employment history as reported by the individual broker on the most recently filed Form U4.

**Please note that the broker is required to provide this information only while registered with FINRA or a national securities exchange and the information is not updated via Form U4 after the broker ceases to be registered. Therefore, an employment end date of "Present" may not reflect the broker's current employment status.**

| Employment | Employer Name | Position | Investment Related | Employer Location |
|---|---|---|---|---|
| 07/2024 - Present | STIFEL, NICOLAUS & COMPANY, INCORPORATED | Vice President/Investments | Y | Bowling Green, KY, United States |
| 10/2019 - 07/2024 | ROBERT W. BAIRD & CO. INCORPORATED | Mass Transfer | Y | BOWLING GREEN, KY, United States |
| 05/2016 - 07/2024 | HILLIARD LYONS | FINANCIAL CONSULTANT | Y | BOWLING GREEN, KY, United States |
| 05/2015 - 05/2016 | LEVEL FOUR WEALTH MANAGEMENT | INTERN/CLIENT SERVICE ASSOCIATE | Y | BOWLING GREEN, KY, United States |
| 08/2012 - 05/2016 | WESTERN KENTUCKY UNIVERSITY | FULL TIME STUDENT | N | BOWLING GREEN, KY, United States |

## Other Business Activities

This section includes information, if any, as provided by the broker regarding other business activities the broker is currently engaged in either as a proprietor, partner, officer, director, employee, trustee, agent or otherwise. This section does not include non-investment related activity that is exclusively charitable, civic, religious or fraternal and is recognized as tax exempt.

No information reported.

©2024 FINRA. All rights reserved. Report about ANDREW D. BOYLES.

7



User Guidance

**End of Report**

**This page is intentionally left blank.**

©2024 FINRA. All rights reserved. Report about ANDREW D. BOYLES.

# EXHIBIT 7



240 S. Pineapple Avenue
9th Floor
Sarasota, Florida 34236

o 941.366.6660
f 941.366.3999
shumaker.com

JARROD J. MALONE
941.364.2715
jmalone@shumaker.com

August 13, 2024

**VIA FEDERAL EXPRESS & EMAIL**

Drew Richey
Andrew Boyles
Josh Marson
Gasper Investment Consulting Group
1131 Fairview Avenue, Suite 202
Bowling Green, KY 42103
Email: *drew.richey@stifel.com; andrew.boyles@stifel.com; josh.marson@stifel.com*

> Re:    Cease and Desist, and Demand w/r/t Post-Employment Obligations and Duties to Robert W. Baird & Co., Incorporated

Dear Messrs. Richey, Boyles, and Marson:

This firm represents Robert W. Baird & Co. Incorporated ("**Baird**").  On July 31, 2024, Baird sent you correspondence that identified certain post-employment obligations that you were alleged to have violated, and which also contained a demand for preservation of documents and communications surrounding your departure from Baird and communications with clients.  I am following up on that letter regarding your resignation on July 31, 2024 and your continued failure to comply with post-employment obligations. Specifically, you have improperly taken confidential client information from Baird, and you have improperly solicited Baird customers, together acting as a breach of multiple contracts. Your invocation of the Protocol For Broker Recruiting ("**Protocol**") is especially concerning since the Team and Retirement Agreements you signed are exempted by the explicit terms of the Protocol and themselves state the Protocol does not apply.

For background, on May 1, 2020 you entered into a Baird Qualified Team Agreement ("**Team Agreement**"). Pursuant to the Team Agreement, any clients you serviced under your unique Rep Code were transferred into the Team Rep Code C701, and these clients became bound by the terms of the Team Agreement.

On April 23, 2021 you entered into a Financial Advisor Retirement Agreement ("**Retirement Agreement**").  In the Retirement Agreement, you agreed to expand your ownership interest of the C701 clients in exchange for imposing certain restrictions on the client relationship above and beyond those contained within the Team Agreement as well as payment obligations for early departure prior to the expiration of the Retirement Period obligations.

In paragraph 15 of the Team Agreement, as well as paragraph 26 of the Retirement Agreement, you agreed to maintain the confidentiality of the Confidential Information (as defined therein).  Specifically, you agreed that you would not disclose nonpublic personal information of

Gasper Investment Consulting Group
August 13, 2024
Page 2

Baird clients to any third party such as Stifel, Nicolaus & Company, Incorporated ("**Stifel**") or use such Confidential Information except to perform your duties as a Baird employee. However, **you took extensive amounts of Confidential Information from Baird** when you left to join Stifel, you deliberately shared that information with Stifel, and you have used such information to solicit Baird clients in violation of your agreements. This behavior is a direct violation of both the Team Agreement and the Retirement Agreement.

In paragraph 16 of the Team Agreement, as well as paragraph 28 of the Retirement Agreement, you agreed not to solicit certain clients governed by each of these contracts. This agreement was part of the consideration for you to receive the benefits afforded to you under the Team Agreement and Retirement Agreement. However, you have actively solicited Baird clients governed by the non-solicit provisions from the Team Agreement and the Retirement Agreement when you left to join Stifel. This behavior is a direct violation of both the Team Agreement and the Retirement Agreement.

In your resignation letters, you referred to the Protocol for Broker Recruiting. The Protocol does not apply to the clients whose information you have taken and who you have solicited. The Protocol expressly states that for any clients subject to a team agreement, the terms of the team agreement control the ability to take confidential information and to solicit the clients. Likewise, the Protocol expressly states that for any clients subject to a retirement agreement, the terms of the retirement agreement control the ability to take confidential information and to solicit the clients. Moreover, both the Team Agreement and the Retirement Agreement specifically acknowledge that the Protocol does not apply to the clients governed by the agreement:

> Successor FA(s) acknowledge that this Retirement Agreement is excluded from the protections afforded by the Protocol for Broker Recruiting as it relates to restrictive covenants.

Retirement Agreement, ¶ 28. Accordingly, the Protocol as well as the governing contracts you signed specifically **exclude** the clients whose information you took and who you have already solicited.

Given your existing violations, Baird is considering all legal rights which include potential legal action against you for your clear violations of the Team Agreement and Retirement Agreement. To prevent any further damage, Baird hereby demands that you do the following within **two business days of the date of this letter**:

1. Concerning the list of customers that you brought with you to Stifel (the "**List**"), you must perform each of the following steps:

   a. Return to Baird's counsel all physical copies of the List,

   b. Destroy any electronic copies of the List,

   c. Delete all information currently stored on any Stifel computers or servers that was derived from the List, and

Gasper Investment Consulting Group
August 13, 2024
Page 3

      d.  Execute an affidavit satisfactory to Baird confirming the steps you have taken to complete each of these tasks.

2.  Immediately cease soliciting all C701 clients and execute an affidavit satisfactory to Baird confirming that you no longer intend to solicit any further C701 clients.

3.  Execute an affidavit identifying all C701 clients who you have contacted and/or solicited as of the date of this letter, and confirming that the list within that affidavit is complete.

Due to the time-sensitive nature of this request, Baird expects that you will promptly comply with the above demands, and we will work with you on the proper form of any such affidavit confirming your compliance with the above demands. If you fail to comply with this request in full within two business days of the date of this letter, Baird reserves the right to seek injunctive relief from a court of competent jurisdiction as well as to seek monetary damages in FINRA Dispute Resolution. Pursuant to the terms of the Team Agreement and the Retirement Agreement, you are responsible for reimbursing Baird its reasonable costs, including attorneys' fees, related to or arising out of its efforts to enforce the terms thereof.

If you have any questions regarding your obligations, please contact me immediately. If you are represented by an attorney, please forward this letter to them promptly. I have copied Stifel's Deputy General Counsel on this letter.

Very truly yours,

*/s/Jarrod J. Malone*

Jarrod J. Malone

JJM/gv

cc:    James C. Browning, Jr.,
       Deputy General Counsel and Vice President, Stifel
       Via email only to: BrowningJC@Stifel.com

# EXHIBIT 8



240 South Pineapple Avenue
9th Floor
Sarasota, Florida 34236

JARROD J. MALONE
941.364.2715
jmalone@shumaker.com

o 941.366.6660
f 941.366.3999
shumaker.com

August 19, 2024

**VIA EMAIL**

Marc S. Dobin
Dobin Law
10700 NE 4th St. Unit 1110
Bellevue, WA 98004

   Re: Robert W. Baird & Co. / Demand to Richey, Boyles, and Marson

Dear Mr. Dobin:

  I have reviewed your letter with my client.  As a preliminary matter, I believe that your clients have provided you with inaccurate or incomplete information, which has created a false impression about the nature of the relationship between themselves, their former colleagues at Robert W. Baird & Co., Incorporated ("**Baird**"), and Baird itself.

  To begin, you do not dispute that the Retirement Agreement executed in 2021 controls the relationship between Drew Richey, Andrew Boyles, and Josh Marson (the "**Gasper Group**") and Baird as to the Baird Clients associated with the C701 Rep Code.  The Retirement Agreement governs all Baird Clients who were associated with that Code as of the date that the agreement was executed.  Section 30 of the Retirement Agreement, titled "<u>Agreement outside Protocol</u>," specifically acknowledges that the Gasper Group's obligations to Baird:

   are not governed by the Protocol for Broker Recruiting ("Protocol"), and impose on them greater obligations than are provided by the Protocol, as to Client Accounts, and (b) that their voluntarily undertaking of the restrictions and obligations as it relates to confidentiality and non-solicitation is in exchange for their receipt of valuable benefits under this Agreement to which they would not otherwise be entitled.

The provision is clear and unambiguous.  The Gasper Group has no right to take confidential information belonging to any Baird Client subject to this agreement—that is to say, any C701 client as of April 23, 2021—nor does the Gasper Group have the right to solicit any such client. The Retirement Agreement makes no exception to this provision based upon the 'primary contact' designation as of the day of the breach.

  Simply put, the Baird Clients identified on the Gasper Group's list are governed by the protections of the Retirement Agreement that prohibit the taking any confidential client information or solicitation of such clients.  Your clients have openly and willfully violated this

Marc S. Dobin
August 19, 2024
Page 2

provision.  Your review of the Retirement Agreement should have immediately exposed that the Gasper Group is entirely mistaken in their belief that the 'primary contact' holds any special meaning.

In addition, the Gasper Group's attempt to pay out their financial responsibility for early termination during the retirement period has no impact on the enforceability of Section 30.  ***Even if*** the Gasper Group had paid the full amount prior to their contractual breach, the exclusion from the Protocol—as well as the continuing one year non-solicit—would still be in full force and effect. The purpose of the payment that was made was by your clients was to compensate Baird for the initial outlay that it made to the retired FA, not as payment intended to relieve your clients of the restrictive covenants outlined in the agreement.

As a further point, the designation of 'primary contact' provides little guidance as to who introduced a given client to the C701 Rep Code.  Your clients may not have told you, but the vast majority of the new clients under C701 were introduced by Shawn Perry, and the designation of 'primary contact' had no direct relationship to who made the initial introduction.  Members of the Gasper Group performed a role as a servicing advisor to client regardless of who made the introduction.  Apparently, the Gasper Group members grew emboldened when Shawn Perry was out on an extended medical leave in 2023.  The character of the Gasper Group was revealed when they chose to lie in wait until Mr. Perry was away on vacation, departing in a premeditated and coordinated manner behind his back.

Finally, the Gasper Group also initiated an abnormally high number of print jobs the week before their departure, which suggests that they may have taken more information than just the list of Baird Clients that are governed by the Retirement Agreement.

Baird wishes to be perfectly clear that the Gasper Group has an ongoing obligation to comply with the terms of the Retirement Agreement.  Accordingly, Baird is willing to provide your clients with an extension of time until **Tuesday, August 20** to comply with the demands from the original letter to ensure that your clients do not further violate the Retirement Agreement as to the dozens or hundreds of accounts contained therein that are governed thereby.  To reiterate, Baird hereby demands that you and the Gasper Group do the following:

1.  Concerning the list of customers that the Gasper Group brought to Stifel (the "**List**"), you must perform each of the following steps:

    a.  Return to Baird's counsel all physical copies of the List,

    b.  Destroy any electronic copies of the List,

    c.  Delete all information currently stored on any Stifel computers or servers that was derived from the List, and

    d.  Execute an affidavit satisfactory to Baird confirming the steps you have taken to complete each of these tasks.

Marc S. Dobin
August 19, 2024
Page 3

2.  Immediately cease soliciting all C701 clients and execute an affidavit satisfactory to Baird confirming that you no longer intend to solicit any further C701 clients.

3.  Execute an affidavit identifying all C701 clients who you have contacted and/or solicited as of the date of this letter and confirming that the list within that affidavit is complete.

Baird reserves the right to seek injunctive relief from a court of competent jurisdiction as well as to seek monetary damages in FINRA Dispute Resolution.  Pursuant to the terms of the Retirement Agreement, the Gasper Group is responsible for reimbursing Baird its reasonable costs, including attorneys' fees, related to or arising out of its efforts to enforce the terms thereof.

If you have any questions regarding these obligations, please contact me immediately.

Very truly yours,

*/s/ Jarrod J. Malone*

Jarrod J. Malone
Attorney at Law

JJM/jmh

31164544v1

# EXHIBIT 9

**FINRA.**

# 13804. Temporary Injunctive Orders; Requests for Permanent Injunctive Relief

**(a) Temporary Injunctive Orders**

(1) In industry or clearing disputes required to be submitted to arbitration under the Code, parties may seek a temporary injunctive order from a court of competent jurisdiction. Parties to a pending arbitration may seek a temporary injunctive order from a court of competent jurisdiction even if another party has already filed a claim arising from the same dispute in arbitration pursuant to this paragraph, provided that an arbitration hearing on a request for permanent injunctive relief pursuant to paragraph (b) of this rule has not yet begun.

(2) A party seeking a temporary injunctive order from a court with respect to an industry or clearing dispute required to be submitted to arbitration under the Code must, at the same time, file with the Director a statement of claim requesting permanent injunctive and all other relief with respect to the same dispute through the Party Portal. The party seeking temporary injunctive relief must also serve the statement of claim requesting permanent injunctive and all other relief on all other parties by overnight delivery service, hand delivery, email or facsimile. Service must be made on all parties at the same time and in the same manner, unless the parties agree otherwise.

(3) After the Director has invited all relevant parties to access the Party Portal, all parties must serve and file all other documents through the Party Portal. A party obtaining a court-issued temporary injunctive order must serve the other parties and file a notice of the issuance of the order with the Director within one business day.

**(b) Hearing on Request for Permanent Injunctive Relief**

(1) Scheduling of Hearing

If a court issues a temporary injunctive order, an arbitration hearing on the request for permanent injunctive relief will begin within 15 days of the date the court issues the temporary injunctive order. If the 15th day falls on a Saturday, Sunday, or FINRA holiday, the 15-day period shall expire on the next business day. Unless the parties agree otherwise, a hearing lasting more than one day will be held on consecutive days when reasonably possible. The Director will provide to all parties notice of the date, time and place of the hearing at least three days prior to the beginning of the hearing.

(2) Composition of Arbitration Panel

The hearing on the request for permanent injunctive relief will be heard by a panel of three arbitrators. The composition of the panel will be determined in accordance with Rule 13402.

(3) Selection of Arbitrators and Chairperson

(A)(i) In cases in which all of the members of the panel are non-public, the Director will generate and provide to the parties a list of seven arbitrators from the FINRA roster of non-public arbitrators. The Director will send to the parties the employment history for the past 10 years for each listed arbitrator and other background information. At least three of the arbitrators listed shall be lawyers with experience litigating cases involving injunctive relief.

(ii) Each party may exercise one strike to the arbitrators on the list. Within three days of receiving the list, each party shall inform the Director which arbitrator, if any, it wishes to strike, and shall rank the remaining arbitrators in order of preference. The Director shall consolidate the parties' rankings, and shall appoint arbitrators based on the order of rankings on the consolidated list, subject to the arbitrators' availability and disqualification.

(B)(i) In cases in which the panel consists of a majority of public arbitrators, the Director will generate and provide to the parties a list of nine arbitrators from the FINRA roster of arbitrators. The Director shall send to the parties employment history for the past 10 years for each listed arbitrator and other background information. At least a majority of the arbitrators listed shall be public arbitrators, and at least four of the arbitrators listed shall be lawyers with experience litigating cases involving injunctive relief.

(ii) Each party may exercise two strikes to the arbitrators on the list. Within three days of receiving the list, each party shall inform the Director which arbitrators, if any, it wishes to strike, and shall rank the remaining arbitrators in order of preference. The Director will combine the parties' rankings, and will appoint arbitrators based on the order of rankings on the combined list, subject to the arbitrators' availability and disqualification.

(C)(i) Each party must inform the Director of its preference of chairperson of the panel by the close of business on the next business day after receiving notice of the panel members.

(ii) If the parties do not agree on a chairperson within that time, the Director shall select the chairperson. In cases in which the panel consists of a majority of public arbitrators, the Director will select a public arbitrator as chairperson. Whenever possible, the Director will select as chairperson the lawyer with experience litigating cases involving injunctive relief whom the parties have ranked the highest.

(D) The Director may exercise discretionary authority and make any decision that is consistent with the purposes of this rule and the Code to facilitate the appointment of panels and the selection of chairperson.

(4) Applicable Legal Standard

The legal standard for granting or denying a request for permanent injunctive relief is that of the state where the events upon which the request is based occurred, or as specified in an enforceable choice of law agreement between the parties.

(5) Effect of Pending Temporary Injunctive Order

Upon a full and fair presentation of the evidence from all relevant parties on the request for permanent injunctive relief, the panel may prohibit the parties from seeking an extension of any court-issued temporary injunctive order remaining in effect, or, if appropriate, order the parties jointly to move to modify or dissolve any such order. In the event that a panel's order conflicts with a pending court order, the panel's order will become effective upon expiration of the pending court order.

(6) Fees, Costs and Expenses, and Arbitrator Honorarium

(A) The parties shall jointly bear reasonable travel-related costs and expenses incurred by arbitrators who are required to travel to a hearing location other than their primary hearing location(s) in order to participate in the hearing on the request for permanent injunctive relief. The panel may reallocate such costs and expenses among the parties in the award.

(B) Each party seeking a temporary injunctive order in court pursuant to this rule must pay a non-refundable surcharge of $2,500 at the time the party files its statement of claim and request for permanent injunctive relief. In the award, the panel may decide that one or more parties must reimburse a party for part or all of the surcharge. The surcharge is in addition to all other non-refundable filing fees or costs that are required under the Code.

(C) Notwithstanding any other provision in the Code, the chairperson of the panel hearing a request for permanent injunctive relief pursuant to this rule shall receive an honorarium of $375 for each single session, and $700 for each double session, of the hearing. Each other member of the panel shall receive an honorarium of $300 for each single session, and $600 for each double session, of the hearing. The parties shall equally pay the difference between these amounts and the amounts panel members and the chairperson receive under the Code pursuant to Rule 13214. The panel may reallocate such amount among the parties in the award.

**(c) Hearing on Damages or Other Relief**

(1) Upon completion of the hearing on the request for permanent relief, the panel may, if necessary, set a date for any subsequent hearing on damages or other relief, which shall be held before the same panel and which shall include, but not be limited to, the same record.

(2) The parties shall jointly bear reasonable travel-related costs and expenses incurred by arbitrators who are required to travel to a hearing location other than their primary hearing location(s) in order to participate in any subsequent hearings on damages or other relief. The panel may reallocate such costs and expenses among the parties in the award.

---

Amended by SR-FINRA-2016-029 eff. April 3, 2017.
Amended by SR-FINRA-2008-021 eff. Dec. 15, 2008.
Adopted by SR-NASD-2004-011 eff. April 16, 2007.

**Selected Notice:** 07-07, 08-57, 17-03.

---

‹ 13803. COORDINATION OF SEXUAL ASSAULT CLAIMS, SEXUAL HARASSMENT CLAIMS OR STATUTORY EMPLOYMENT DISCRIMINATION CLAIMS FILED IN COURT AND IN ARBITRATION    UP    13805. EXPUNGEMENT OF CUSTOMER DISPUTE INFORMATION FROM THE CENTRAL REGISTRATION DEPOSITORY (CRD) SYSTEM ›

Case 1:24-cv-00115-DJH    Document 12-2    Filed 09/17/24    Page 101 of 101 PageID #:
9/6/24, 1:38 PM                          13804. Temporary Injunctive Orders; Requests for Permanent Injunctive Relief | FINRA.org
2261

**VERSIONS**

Apr 03, 2017 onwards