UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

ROBERT W. BAIRD & CO.,
INCORPORATED,

        **Plaintiff,**

    v.

NATHAN DREW RICHEY, JOSHUA J.
MARSON, and ANDREW DOUGLAS
BOYLES,

        **Defendants.**

Case No. __1:24-cv-00115-DJH__

## DECLARATION OF SHAWN M. PERRY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

SHAWN M. PERRY declares under penalty of perjury that the following is true and correct and states as follows:

1. I am over 21 years of age and am fully competent to make the statements contained in this Declaration based upon my personal knowledge.

2. I am a Financial Advisor and Branch Manager employed by the Plaintiff Robert W. Baird & Co., Inc. ("Baird").

3. At Baird, I was the team leader, Branch Manager, and Managing Director for the Perry Richey Group (the "**Group**"). As of July 30, 2024, the Group was comprised of myself, Nathan D. Richey, Andrew D. Boyles, Joshua J. Marson, and two assistants—Brooke Schakat and Savannah York.

4. I have been a registered Financial Advisor for more than 24 years, beginning at Morgan Stanley in 2000. At Morgan Stanley, I partnered with Michael Jennings ("**Jennings**") and formed a team.

1

5.      Jennings and I worked diligently to grow the Group and were successful. As the Group rapidly expanded, Jennings and I found ourselves able to support junior Financial Advisors. We brought these junior Financial Advisors into the Group to assist with servicing the clients Jennings and I sourced:

      a.  In or about 2008, we hired Nathan "Drew" Richey ("**Richey**");

      b.  In or about 2012 we hired Joshua J. Marson ("**Marson**"); and

      c.  In or about 2016, we hired Andrew D. Boyles ("**Boyles**").

6.      Richey, Marson, and Boyles each joined the Group as junior Financial Advisors with effectively no clients and no experience in the financial industry. Jennings and I invested significant time, money, and effort training Richey, Marson, and Boyles.

7.      As of 2024, my team served more than 2,500 clients, representing approximately $800 million in assets under management and $5.6 million in annual revenue. Jennings and I sourced and acquired the vast majority of these clients and assets.

8.      Over time, Jennings and I assigned certain of our clients to be serviced by Richey, Marson, and/or Boyles. This assignment for service in no way impacted "ownership" of the client relationship; all clients I sourced remained my clients.  Richey, Marson, and Boyles merely serviced those accounts.

9.      The Group joined Baird in October 2019 due to Baird's acquisition of Hilliard Lyons.

10.      As of 2021, the group operated with a single 'Joint Rep Code.' At Baird, that Joint Rep Code was C701. All clients, regardless of which member sourced the client, were placed under C701. For purposes of compensation alone (i.e. without respect to "ownership"), each producing member of the Group was assigned a percentage of the Gross Production.

11.     In early 2021, Jennings decided to retire. As a result, each producing member of the Group, myself included, entered into the Financial Advisor Retirement Agreement which delineated terms and conditions for Jennings' retirement and our corresponding increase in payout as a result. A true and correct copy of the "Retirement Agreement" is attached to the Complaint as Exhibit 1.

12.     Pursuant to the Retirement Agreement, in exchange for, *inter alia*, an increased payout on the approximately 2,500 clients serviced by the Group in Joint Rep Code C701, each member of the Group agreed to be subject to various restrictive covenants such as non-solicitation and confidentiality agreements with respect to those clients (the "**Retirement Agreement Accounts**").

13.     The Retirement Agreement further provides that the terms of the agreement fall outside of the Protocol for Broker Recruiting ("**Protocol**"). For context, the Protocol is an intra-industry agreement governing the use of client information when registered representatives move between firms that are signatories to the Protocol.  The Retirement Agreement specifically states that the parties' "obligations to Baird as it relates to the Non-Solicitation and Confidentiality of Information paragraphs are not governed by the Protocol for Broker Recruiting."  In other words, the Protocol does not apply to Retirement Agreement Accounts.

14.     In March 2023, I was diagnosed with Stage 4A throat cancer. As a result, I was forced to take more than two continuous months of medical leave to obtain the aggressive treatment recommended by my doctors and medical professionals.  While I was on medical leave, I asked Richey to service a number of my larger clients and to take temporary leadership in my absence.

15.     When my medical condition improved to the state that I could return to the office, my clients naturally gravitated back to me for service.  Further, upon my return, Richey was required to relinquish the temporary leadership he held during my absence.  These two changes apparently

upset Richey, who I believe became disgruntled as a result.

16.     In late July of 2024, I took a planned vacation with my family to Maine. Richey, Marson, and Boyles were aware of this vacation well in advance. In the middle of my family vacation, on July 31, 2024, and without any prior notice, I was informed that Richey, Marson, and Boyles had submitted their resignations in unison and were joining a direct competitor, Stifel, Nicolaus & Co., Inc. ("Stifel") and that they were soliciting my clients to leave me.

17.     Richey, Marson, and Boyles kept and brought to Stifel a detailed list of the clients which I had generated over the years including client names, addresses, phone numbers, email addresses, and account titles—all information which could be used to immediately contact and solicit my clients to follow Richey, Marson, and Boyles to Stifel. The "Account List," attached to the Complaint as **Exhibit 2**. The Account List is 23-pages long and contains the above-referenced confidential information for approximately 1,400 accounts. Approximately 900 of the 1,400 accounts on the Account List created and taken by Defendants are Retirement Agreement Accounts. This is clear misappropriation of confidential information which is directly prohibited by the Retirement Agreement.

18.     Further, Richey, Marson, and Boyles asserted in their resignation letter that they intended to solicit my clients and in fact did—and continue to—solicit my clients to join them at Stifel. For example, my clients received the attached email touting an "Exciting Announcement" and stated they "invite [the client] to join us at Stifel to continue our work together." *See July 31, 2024 Email from Drew Richey*, attached to the Complaint as **Exhibit 3**. This communication is a clear solicitation which, again, is directly prohibited by the Retirement Agreement.

19.     Defendants' acts in taking this information and soliciting these accounts violated the Retirement Agreement.  Moreover, Defendants' acts in taking this information and soliciting these

accounts threatens to undermine my life's work in building my book of business.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

_____
Shawn M. Perry
Dated: September __11__, 2024